MARGUERITE SUSEN, Plaintiff-Appellant, *v.* CITIZENS BANK & TRUST COMPANY, Defendant-Appellee.

First District (2nd Division)   No. 81—3180

Opinion filed December 28, 1982.

Stitt, Moore & Lennon, of Rolling Meadows (James K. Lennon, of counsel), for appellant.

Burke, Griffin, Chomicz & Wienke, P.C., of Chicago (Jeffrey D. Warren and William J. Raleigh, of counsel), for appellee.

JUSTICE PERLIN delivered the opinion of the court:

Marguerite Susen filed a two-count complaint against Citizens Bank & Trust Company of Park Ridge claiming $8,000 for a loss that occurred when Citizens allegedly breached its obligations under the Uniform Commercial Code and under the parties' checking account agreement. The trial court granted Citizens' motion to dismiss.

On appeal, Susen contends that the trial court erred in finding that a check bearing a forged indorsement effectively transferred funds into plaintiff's checking account; that defendant had not breached its checking account agreement with plaintiff; that the bank used "reasonable commercial standards" in cashing certain checks;

and that there was sufficient evidence of affirmative matters alleged by defendant so as to defeat plaintiff's claim.

Plaintiff, Marguerite Susen (Susen) and her daughter, Jacqueline Herrick (Herrick), had a joint checking account at Citizens Bank & Trust Company of Park Ridge (Citizens). Susen and Herrick were the only two authorized signatories for the checking account. Citizens kept specimen signatures for each of them. The parties also had a "joint survivorship checking agreement" which stated:

> "That all deposits *** made in this account by or for any one or more of us, may be paid to us jointly or severally and may also be paid upon our joint and several orders ***
>
> * * *
>
> That checks, drafts, notes, bills of exchange and orders for the payment of money sent to or received by you [Citizens] for the account of any one or more of us may be credited to this account.
>
> That any one or more of us may endorse *** for deposit and deposit in this account, checks *** payable to any one or more of us ***."

On June 6, 1979, Bell Federal Savings and Loan, as drawer, issued a $5,000 check payable to the order of Susen (Bell check). The drawee of the check was Harris Trust and Savings Bank. Two days later an unidentified person entered Citizens and presented the Bell check for deposit into Susen's checking account. The check bore the indorsement "Marguerite Susen" but Susen alleged that the indorsement was a forgery. Citizens credited the proceeds to Susen's checking account but according to Susen, she did not receive notice of the deposit nor did she authorize such deposit. Her checking account balance before the deposit was $3,800.

Herrick had signed two blank checks on her joint account with Susen at Citizens, but these checks were allegedly stolen by a woman who worked for Susen. The record does not reflect when these checks were stolen. On June 12, 1979, one of the stolen checks was completed in the amount of $5,000 and made payable to that employee. This check was cashed at the First State Bank of Chicago. The check went through the normal check clearing process and was presented for payment at Citizens. Citizens had no notice that the check had been stolen or altered and, pursuant to Herrick's authorized signature, Citizens honored the check and debited Susen's account for the proceeds. On June 20, 1979, the other stolen check was completed for $3,000 and again made payable to Susen's employee. This check was apparently cashed also at the First State Bank of Chicago and was

thereafter presented for payment at Citizens through the check clearing process. Citizens again paid the proceeds pursuant to Herrick's signature because it had no notice that the check had been stolen or altered.

Susen first received notice of the deposit and payment of the $5,000 and $3,000 checks in her July 1, 1979, monthly bank statement. She notified Citizens that none of these transactions was authorized by her and demanded that her account be credited so that the account would not reflect the deposit or the payment of the $5,000 and $3,000 checks. The bank, however, refused to adjust her account.

In the instant case, Susen seeks to recover the funds paid on the $5,000 and $3,000 checks because these checks were materially altered (*i.e.,* words and figures were inserted in the spaces Herrick left blank). Citizens, however, seeks to bar Susen's action on the ground that Susen's joint tenant, Herrick, was negligent in signing the blank checks.

■ Section 3—406 of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1979, ch. 26, par. 3—406) provides:

> "Any person who by his negligence substantially contributes to a material alteration of the instrument *** is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."

The Code does not define negligence. The official UCC comment to this section, however, states: "Negligence usually has been found where spaces are left in the body of the instrument in which words or figures may be inserted." (Ill. Ann. Stat., ch. 26, par. 3—406, Uniform Commercial Code Comment, at 247 (Smith-Hurd 1963).) A similar holding in *Merritt v. A. W. Boyden & Son* (1901), 191 Ill. 136, 60 N.E. 907, has been codified in Illinois (Ill. Ann. Stat., ch. 26, par. 3—406, Illinois Code Comment, at 244 (Smith-Hurd 1963).) In *Merritt,* the maker executed and delivered a note with a blank space before the word "hundred." The payee, instead of inserting the word "one" as the maker intended, inserted the word "thirteen." The Illinois Supreme Court held that the maker was liable to a holder in due course for $1300. *Merritt v. A. W. Boyden & Son* (1901), 191 Ill. 136, 142.

A similar situation occurred in the case at bar when Herrick signed the two checks but left the remaining spaces blank. Citizens claims that Herrick's negligence contributed to the alteration of the $5,000 and $3,000 checks and contends that Susen, as the other joint tenant of the checking account, is thereby barred from maintaining

her action.

A bank, it should be noted, may raise the defense of its customer's negligence only if the bank acted in accordance with reasonable commercial standards. (*Empire Moving & Warehouse Corp. v. Hyde Park Bank & Trust Co.* (1976), 43 Ill. App. 3d 991, 997, 357 N.E.2d 1196.) Susen contends that Citizens did not act pursuant to reasonable commercial standards when Citizens deposited the "Bell" check into Susen's account without her authority. According to Susen, such authority would exist only if the "Bell" check contained her genuine indorsement. Since, without that deposit, there would have been insufficient funds in the account to pay the first altered check, Susen concludes that Citizens' actions constituted a failure to follow reasonable commercial standards, thus contributing to her loss. She argues that Citizens is precluded from raising Herrick's negligence as a defense.

Neither the UCC nor Illinois case law establishes whether it is reasonable commercial practice for a bank to accept for deposit into a payee's account a check which, unknown to the bank, contains his forged indorsement. We note that generally, when money is deposited in a bank, a debtor-creditor relationship exists between the bank and the depositor and the rules governing their relationship are determined by the contract which exists between them. (*Menicocci v. Archer National Bank* (1978), 67 Ill. App. 3d 388, 391, 385 N.E.2d 63.) If a third party deposits money into the checking account of another without his knowledge or consent and without authority, it could be argued that the relationship of debtor and creditor does not exist with reference to such funds. (Michie on Banks and Banking, ch. 9, sec. 8 (4th ed. 1973).) On the other hand, if the bank in fact is authorized to accept the deposit, title to the funds passes to the bank and it becomes a debtor to its customer. (*Mid-City National Bank v. Mar Building Corp.* (1975), 33 Ill. App. 3d 1083, 1089, 339 N.E.2d 497.) Thus, the characterizations of Citizens' actions in this instance depend on whether such actions were expressly or impliedly authorized by Susen.

In the instant case, Susen appears to have authorized Citizens to deposit the "Bell" check without her knowledge. The checking account agreement between the parties provides that any check sent to or received by Citizens for the account of Susen may be credited to her account. While the agreement also provides that either Susen or Herrick *may* indorse for deposit any check made payable to one or both of them, nothing therein requires that all deposits *must* bear Susen's (or Herrick's) genuine signature. Since we conclude that the

agreement between Susen and Citizens permits Citizens to deposit proceeds into Susen's account without her knowledge, this agreement controls their relationship and is not violative of the UCC. Ill. Rev. Stat. 1979, ch. 26, par. 1—102(3).

In light of the parties' agreement, we conclude that the bank acted in accordance with reasonable commercial standards. Moreover, since the deposit was authorized, it follows that legal title to the proceeds passed to Citizens and that the bank was a debtor to Susen for the proceeds of the "Bell" check. Citizens could then pay out the proceeds only upon Susen's or Herrick's order. When Citizens received the two checks here in question, it had no notice that the checks were stolen or altered and it appeared that Herrick had authorized payment of the proceeds from the account. In our opinion, none of Citizens' actions have contributed to the wrongful payment of the altered checks. The bank, therefore, could properly assert Herrick's negligence to bar Susen's action.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P.J., and HARTMAN, J., concur.