CENTRAL, INC., Plaintiff–Appellee,

v.

CACHE NATIONAL BANK, Defendant–Appellant.

No. 85CA1076.

Colorado Court of Appeals, Div. III.

Nov. 12, 1987.

Houtchens, Houtchens and Daniel, Kim R. Houtchens, Greeley, for plaintiff-appellee.

Tilly & Graves, P.C., David D. Schlachter, Denver, for defendant-appellant.

CRISWELL, Judge.

Defendant, Cache National Bank (the Bank), appeals the judgment entered upon a jury verdict in favor of plaintiff, Central, Inc., a corporation, for $102,816.79 for conversion. It contends that the trial court erred in excluding evidence and in refusing to give tendered jury instructions, based upon the court's conclusion that, as a matter of law, the Bank did not act in accordance with reasonable commercial standards. We affirm.

Plaintiff granted to its treasurer, who was the brother of its owner and general manager, authority to make deposits of checks received by it. The treasurer opened an account with a small initial cash deposit at the Bank, an institution with which neither plaintiff nor the treasurer had had any previous transactions. The account was opened under the treasurer's name, but doing business as "Central." At that time the treasurer informed the Bank employees that the account was to be used in connection with a softball team, and it was treated as an assumed name account.

Later, the treasurer deposited checks from customers into this account that were payable to "Central, Inc.," and he wrote

checks upon this account, which the Bank honored, for his own benefit. None of the deposited checks were indorsed with a written signature of the payee's name. Rather, the reverse of each check contained a written direction that it was "for deposit only" into the account that the treasurer had opened at the Bank, identified only by its account number. When asked to provide a personal signature indorsement, the treasurer declined to do so, claiming that he had been making deposits in this manner for a long period of time without objection. The Bank acquiesced in this practice and continued to accept checks made payable to plaintiff and indorsed in this manner, without making any inquiries of plaintiff concerning either the corporate status of "Central" or the treasurer's authority to draw upon corporate funds in this manner.

The treasurer's defalcations were not discovered until after his death. Plaintiff then brought this action for conversion of funds, alleging that the Bank's actions in crediting the proceeds from checks payable to the corporation to the account established by the treasurer constituted a conversion of plaintiff's property under § 4–3–419(1)(c), C.R.S. That statute provides that a check may be converted, among other ways, when "it is paid on a forged indorsement." *See* Restatement (Second) of Torts § 241A (1965).

The parties and the district court treated the issues raised by plaintiff's claim on the basis that, when the Bank credited the treasurer's account with the proceeds of checks payable to "Central, Inc." collected from drawee banks, it "paid" those checks under a "forged indorsement" within the meaning of § 4–3–419(1)(c), and thereby committed the act of conversion. *See* J. White & R. Summers, *Uniform Commercial Code* § 15–4 (1980). We will, likewise, treat the issues under that theory.

### I.

Section 4–3–406, C.R.S., provides that, if a bank that has committed a conversion as defined in § 4–3–419(1)(c), has, nevertheless, paid the instrument involved "in good faith and in accordance with the reasonable commercial standards," it may avoid liability by proving that a plaintiff's "negligence substantially contribute[d] to ... the making of an unauthorized signature." Likewise, if such a bank exercises good faith and acts in accordance with reasonable commercial standards, it will, in any event, be liable only to the extent "of any proceeds remaining in [its] hands." Section 4–3–419(3), C.R.S.

The effect of these statutory provisions is to create affirmative defenses which must be pleaded and proven by the defendant. *See Citizens State Bank v. National Surety Corp.,* 199 Colo 497, 612 P.2d 70 (1980). Hence, a bank must establish, prima facie, its good faith and its lack of negligence before either of these defenses is available to it. Unless the commercial reasonableness of the bank's actions is established by the evidence, a plaintiff's negligence is irrelevant, for if *both* are negligent, the bank is strictly liable. *Bank of the West v. West-Con Development Co., Inc.,* 15 Wash.App. 238, 548 P.2d 563 (1976); *Gresham State Bank v. O & K Construction Co.,* 231 Or. 106, 370 P.2d 726 (1962). *See also Medford Irrigation District v. Western Bank,* 66 Or.App. 589, 676 P.2d 329 (1984).

As is the general rule in all negligence cases, the issue whether a bank has acted in a commercially reasonable manner is generally a question of fact, to be decided within the context of the specific record and in light of normal business transactions. *See Aetna Casualty & Surety Co. v. Hepler State Bank,* 6 Kan.App.2d 543, 630 P.2d 721 (1981); *Continental Bank v. Wa–Ho Truck Brokerage,* 122 Ariz. 414, 595 P.2d 206 (1979); *Cooper v. Union Bank,* 9 Cal.3d 371, 107 Cal.Rptr. 1, 507 P.2d 609 (1973). There are instances, however, where the circumstances demonstrate, as a matter of law, that the bank did not comply with reasonable commercial standards. *See FDIC v. Marine National Bank,* 431 F.2d 341 (5th Cir.1970); *Belmar Trucking Co. v. American Trust Co.,* 65 Misc.2d 31, 316 N.Y.S.2d 247 (N.Y.City Civ. Ct.1970).

The Bank here, as a part of its case, attempted to introduce expert and lay testimony which, it asserts, would have proven that plaintiff had inadequate internal controls that allowed the treasurer to embezzle funds, both in conjunction with the account at the Bank and elsewhere, and that the treasurer's actions and lifestyle should have placed plaintiff on notice that the treasurer was receiving substantial sums from a source other than his salary. Such evidence, it asserts, would have established a basis for either or both of the two statutory defenses described in §§ 4–3–406 and 4–3–419(3).

However, although the trial court acknowledged that at least a substantial portion of this evidence would be relevant to the issue of plaintiff's negligence, it refused to allow its introduction, concluding that the undisputed evidence had established that, as a matter of law, the Bank had not acted in accordance with reasonable commercial standards. In addition, it refused to instruct the jury upon either of these defenses for the same reason. The Bank claims that the district court committed prejudicial error in each instance. We disagree.

■ As a matter of law, reasonable commercial standards require a bank, when dealing with checks purportedly indorsed by an agent, to inquire as to the authority of that agent, particularly if the funds are to be credited to the agent's personal account. *See Swiss Baco Skyline Logging, Inc. v. Haliewicz,* 18 Wash.App. 21, 567 P.2d 1141 (1977) (duty to inquire of president's authority to indorse corporate check in blank in payment for a certificate of deposit payable to president); *Mott Grain Co. v. First National Bank & Trust Co.,* 259 N.W.2d 667 (N.D.1977) (duty to inquire as to the authority of indorser to deposit properly indorsed corporate check in personal account); *Belmar Trucking Co. v. American Trust Co., supra* (judicial notice may be taken of duty of bank to make inquiry as to agent's authority to indorse); *Salsman v. National Community Bank,* 102 N.J.Super 482, 246 A.2d 162 (1968) (bank liable for failure to inquire as to

attorney's authority to indorse check payable to estate).

■ Here, when the treasurer initially opened the account, the Bank, without specific inquiry as to the status of "Central," treated the account as a personal one, involving merely an assumed name. Later, the Bank allowed instruments, payable to a corporation, to be deposited into that account, without a signature indorsement, and without requiring the presentation of an appropriate corporate resolution or other evidence of the treasurer's authority.

There was testimony from a former Bank official who expressed the general opinion, without specific reference to the Bank's duty to make inquiry, that the Bank's actions comported with reasonable commercial standards. In spite of this testimony, however, we conclude that, when the Bank was tendered checks payable to the corporate plaintiff, a duty arose to inquire of plaintiff as to the authority of the treasurer with respect to such checks before they could be credited to a non-corporate account. *See Mott Grain Co. v. First National Bank & Trust Co., supra.*

Since the undisputed evidence established that the Bank made no such inquiry, the court properly determined that the Bank had failed, as a matter of law, to act in accordance with reasonable commercial standards. Thus, it was not entitled to take advantage of either of the defenses described in § 4–3–406 or § 4–3–419(3), and the existence of any negligence on the part of plaintiff was irrelevant.

## II.

Relying upon *United States Portland Cement Co. v. United States National Bank,* 61 Colo. 334, 157 P. 202 (1916), the Bank also argues that no claim can lie against it for conversion because plaintiff's institution of this action against it constituted a ratification of the Bank's collection of the checks from the various drawee banks and, thus, a ratification of the unauthorized indorsements. We reject this argument.

*Portland Cement* was decided prior to the adoption of the UCC. It involved a claim by a named payee against a collecting bank that had accepted checks with forged indorsements, forwarded them to drawee banks, and paid over the collected proceeds to the forger. In holding that the payee had a claim against the collecting bank, the court concluded that the payee's institution of the action against the collecting bank constituted a ratification of the *collection* of the proceeds from the drawee banks. *See* § 4–3–404, C.R.S. Upon such collection, however, the collecting bank held the funds for the payee's benefit. Hence, when that bank wrongfully paid the funds to the forger, a claim arose against it and in favor of the payee for moneys had and received.

The *Portland Cement* opinion contains no discussion of the question whether a claim for conversion, as well as a claim for moneys had and received, could be asserted against the collecting bank. Nothing within that opinion would lead to the conclusion that such a claim would not lie; the issue was simply not discussed.

 The theory of ratification enunciated in *Portland Cement* is generally accepted by other courts. *See Cooper v. Union Bank, supra.* The purpose of this theory, generally, is to require the payee to make an election between suing the drawee bank or the collecting bank. *See Denver Electric & Neon Service Corp. v. Gerald H. Phipps, Inc.,* 143 Colo. 530, 354 P.2d 618 (1960). However, ratification of a collecting bank's collection of the proceeds does not constitute a ratification of that bank's payment of the proceeds to the forger; nor does it bar an action in conversion against the collecting bank. *See Cooper v. Union Bank, supra* ("Ratification of collection, however, does not constitute a ratification of the collecting bank's delivery of the proceeds to the wrong person."); Comment, *Payee v. Depositary Bank: What is the UCC Defense to Handling Checks Bearing Forged Indorsements?*" 45 U.Colo.L. Rev. 281 (1973–74) ("The real payee, in this situation, ratifies the payment by the drawee bank on the forged or unauthorized

indorsement, but claims the money from the collecting bank on the theory that it is either guilty of conversion, or is subject to quasi-contractual liability," quoting 1 B.E. Witkin, *Summary of California Law,* ch. 4, § 87(1)(b) (7th ed. 1960)).

The payee's right to maintain an action in conversion against the collecting bank under Colorado law was first clearly recognized in *National Surety Corp. v. Citizens State Bank,* 41 Colo.App. 580, 593 P.2d 362 (1978), *aff'd,* 199 Colo. 497, 612 P.2d 70 (Colo.1980). There we held that at common law an action in conversion would lie against a collecting bank in circumstances similar to those disclosed by this record. Moreover, in affirming our judgment in *National Surety,* the supreme court noted that the payee had "a cause of action against the bank either *ex delicto* for conversion or *ex contractu* for moneys had and received." *Citizens State Bank v. National Surety Corp., supra.*

 Thus, we conclude that, while plaintiff's institution of this action might have constituted a ratification of the drawee banks' payment of the proceeds to the Bank, thereby estopping it from maintaining an action against those parties, plaintiff did not ratify the Bank's payment of the proceeds to the treasurer. The Bank's wrongful payment of the funds into the treasurer's account constituted a conversion under § 4–3–419(1)(c), C.R.S.

Judgment affirmed.

KELLY and TURSI, JJ., concur.