819 P.2d 1133

**VALLEY BANK, an Idaho banking corporation, Plaintiff–Respondent, Respondent on Appeal,**

v.

**Ryan NEIBAUR and Vicki Neibaur, husband and wife, Defendants–Appellants, Appellants on Appeal,**

and

**Monarch Investment Company, Monarch Coin Company, John D. Larsen, Paul Larsen, R & N Enterprises, and John Does One Through Ten, Defendants–Appellants.**

No. 18033.

Supreme Court of Idaho,
Idaho Falls, May 1991 Term.

Aug. 20, 1991.

Rehearing Denied Nov. 21, 1991.

Imhoff & Lynch, Boise, for Neibaur, et al. Stephen McGrath argued.

Anderson, Pike & Bush, Idaho Falls, for Valley Bank. Gregory S. Anderson argued.

ON REHEARING

JOHNSON, Justice.

Following the issuance of the opinion in this case, the Court granted rehearing to consider whether the Neibaurs should be precluded under I.C. § 28–3–406 from asserting Palmer's unauthorized indorsement. This issue was raised before the magistrate judge, on appeal to the district judge, and on appeal to this Court. We did

not specifically address the issue in our original opinion.

The statute on which Valley Bank bases its argument provides:

> **28–3–406. Negligence contributing to alteration or unauthorized signature.—** Any person who by [that person's] negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack or authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

I.C. § 28–3–406.

Valley Bank asserts that there was conclusive evidence of negligence on the part of the Neibaurs that substantially contributed to Palmer's unauthorized indorsement. Valley Bank also contends that there is unrebutted evidence that in paying the Neibaurs' check by issuing a cashier's check payable to the same payee they complied with reasonable banking standards.

The magistrate judge made the following finding of fact:

> 7. At the time the check was tendered at the bank, no identification of the gentleman presenting the check was required by the bank employee. The employee did, however, attempt two telephone calls to a number given her, purporting to be his business. There was no answer. No other attempts to contact his purported employer or to establish his identity or authority were made.

The magistrate judge reached this conclusion of law:

> 2. Valley Bank was negligent by failing to make inquiries which a reasonably prudent person would make incident to this transaction. There was a complete failure to ascertain the identity and also the agency or authority of the person cashing the Neibaur check.

The bank had a duty to inquire as to Mr. Palmer's identity and authority. Absent such inquiry and confirmation, the indorsement is unauthorized under Idaho Code 28–3–404, and Ryan Neibaur is entitled to receive money from Valley Bank for the amount of his check Number 30[4].

Although the magistrate judge phrased this ruling in terms of Valley Bank's negligence, since Valley Bank had argued that I.C. § 28–3–406 precluded the Neibaurs from asserting Palmer's lack of authority, we construe the ruling that Valley Bank was negligent to be, in effect, a ruling that Valley Bank did not pay the check in accordance with reasonable banking standards.

■ Valley Bank contends that the unrebutted testimony of its operations officer established that Valley Bank paid the Neibaurs' check in accordance with reasonable banking standards. The critical part of the testimony of the operations officer upon which Valley Bank relies is as follows:

Q In your association with these various banking organizations and in the community of Pocatello, are you familiar with the way other banks handle items and problems such as those that you were confronted with on May 22nd?

A Yes.

Q In your experience is it a fairly common procedure that cashier's checks are substituted for personal checks?

A Yes.

Q Is it your experience that many times signatures and indorsements on a personal check is not required?

A Yes, sir.

Q In your opinion, is that a reasonable banking procedure?

A Yes.

Our reading of this testimony is that it was the opinion of the operations officer that it is a reasonable banking procedure to issue a cashier's check naming the same payee as the payee on a personal check that is presented for payment at the drawee bank. As we read this testimony, whether this is true or not the personal check is indorsed upon presentment. The implication of this testimony for this case is

to support the proposition that it was in accordance with reasonable banking standards for Valley Bank to issue a cashier's check naming the same payee as the payee on the Neibaurs' check, even though Palmer's indorsement was not authorized.

In order to determine the effect of the testimony of the operations officer under I.C. § 28–3–406, we must first decide whether the question of Valley Bank's payment of the Neibaurs' check in accordance with reasonable banking standards is a question of law or a question of fact. Appellate courts of other jurisdictions have wrestled with this question without giving an unequivocal answer.

In *Eatinger v. First Nat'l Bank of Lewistown,* 199 Mont. 377, 649 P.2d 1253 (1982), the Montana Supreme Court said:

> In *Twellman v. Lindell Trust Co.* (Mo. App.1976), 534 S.W.2d 83, 93 ALR3d 943, the court held, as a matter of law, that the drawee bank, in accepting a check whose first indorsement was made by someone other than the payee, did not act in accordance with reasonable commercial standards and affirmed the directed verdict for the plaintiff. Here, copies of the checks were attached to the amended complaint and clearly showed the indorsement was by someone other than the payee. Because of this, the bank did not act in accordance with reasonable commercial standards as a matter of law.

Id. at 1256.

In *Aetna Casualty & Sur. Co. v. Hepler State Bank,* 6 Kan.App.2d 543, 630 P.2d 721 (1981), the Kansas Court of Appeals said:

> Whether or not a bank acted in a commercially reasonable manner is a question of fact.
>
> Barring exceptional circumstances, the general rule is that failure of a bank to inquire when an individual cashes a check made payable to a corporate payee and puts the money in [the individual's] personal account is an unreasonable commercial banking practice as a matter of law.

The trial court here had ample evidence to support its finding that the bank acted in a commercially unreasonable manner. The bank's act of depositing checks payable to a corporate payee into a personal checking account without inquiring as to the depositor's authority was enough. In addition, there was expert testimony from a long-time banker that the bank's actions fell short of acceptable banking practices. The trial court's finding on this issue must stand.

*Id.* 630 P.2d at 728 (citations omitted).

In *Continental Bank v. Wa–Ho Truck Brokerage,* 122 Ariz. 414, 595 P.2d 206 (App.1979), the Arizona Court of Appeals concluded "that what constitutes reasonable commercial standards must be decided in the context of specific facts." *Id.* 595 P.2d at 212.

With the guidance of these cases and considering the context in which "reasonable commercial standards" is used in I.C. § 28–3–406, we conclude that the determination of what constitutes reasonable commercial standards is a mixed question of fact and law. Donald Burnett, Jr., a former judge of our Court of Appeals, has referred to mixed questions of law and fact as "applications of legal rules or principles to certain facts." D. Burnett, *Standards of Appellate Review in State and Federal Courts,* in Idaho Appellate Handbook 3–6 (2d ed. 1989). To the extent the Uniform Commercial Code (UCC) as it exists in Idaho contains legal rules or principles, these legal rules or principles will govern the result in this case.

We have searched the UCC in vain for any standard concerning the payment of a check drawn on a bank when presented for payment by issuing a cashier's check payable to the same payee without requiring indorsement by the person presenting the check for payment. I.C. § 28–3–505(1) states the things the party to whom presentment is made may require without dishonoring an instrument:

> **28–3–505. Rights of party to whom presentment is made.—**(1) The party to whom presentment is made may without dishonor require

(a) exhibition of the instrument; and

(b) reasonable identification of the person making presentment and evidence of his authority to make it if made for another; and

(c) that the instrument be produced for acceptance or payment at a place specified in it, or if there be none at any place reasonable in the circumstances; and

(d) a signed receipt on the instrument for any partial or full payment and its surrender upon full payment.

I.C. § 28–3–505(1).

This portion of the UCC is silent, however, as to the reasonableness of failing to obtain a signed receipt (indorsement) on presentment when a cashier's check is issued in exchange naming the same payee as the payee in the original check. No other portion of the UCC addresses this question specifically. I.C. § 28–1–102(2)(b) does, however, give some guidance:

(2) Underlying purposes and policies of this act are

. . . .

(b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

I.C. § 28–1–102(2)(b).

In order to determine the identity of the reasonable commercial standards, to the extent those standards are not contained in the UCC, we must turn to evidence of custom and usage. This is the type of evidence given by the operations officer of Valley Bank. Since that testimony was not rebutted, it establishes for this case what the reasonable banking standards were.

Valley Bank issued its cashier's check in the name of Monarch Investment pursuant to the reasonable banking standard proved by the unrebutted evidence. Monarch Coin became a holder in due course of the cashier's check, thus preventing Valley Bank from stopping payment on the check. This does not affect the significance of the testimony of the operations officer of Valley Bank. If the cashier's check was issued pursuant to reasonable banking standards at the time it was issued, subsequent events that allowed Monarch Coin to receive the proceeds of the cashier's check do not mean that the issuance of the cashier's check was not in accordance with reasonable banking standards.

Therefore, we hold that the magistrate judge had no basis to rule that Valley Bank did not pay the Neibaurs' check in accordance with reasonable banking standards.

Because the magistrate judge did not determine whether under I.C. § 28–3–406 the Neibaurs by their negligence substantially contributed to the making of Palmer's unauthorized indorsement, we vacate that part of the judgment in favor of the Neibaurs and against Valley Bank and remand the case to the magistrate judge for this determination and further proceedings consistent with this opinion.

We also vacate the award of costs and attorney fees to the Neibaurs on appeal. We award costs but not attorney fees on appeal to Valley Bank against the Neibaurs.

BAKES, C.J., and McDERMOTT, J., Pro Tem., concur.

McDEVITT, Justice, specially concurring:

While I concur in this opinion, I write to emphasize that my concurrence is based solely upon the fact that Valley Bank's evidence as to commercial reasonableness was unrebutted.

Valley Bank maintains that I.C. § 28–3–406 precludes the Neibaurs from asserting Palmer's lack of authority. In order to prevail under this statute, Valley Bank had to prove that the Neibaurs' negligence contributed to the unauthorized endorsement and that the Bank's actions were consistent with reasonable commercial standards of the banking industry. To determine what course of conduct is commercially reasonable, we inquire into the custom and usage of trade within the applicable industry. Custom and usage must be clearly proven, where the evidence is conflicting and contradictory, the custom is not established. *Martin v. Whiteley*, 89 Idaho 429, 405 P.2d 963 (1965); *Dingler v. Simpson*, 83 Idaho

439, 364 P.2d 181 (1961). Custom and usage is established by testimony of specific uses and acts or by other evidence indicating an established practice within the industry. *Commercial Insurance Co. v. Hartwell Excavating Co.*, 89 Idaho 531, 407 P.2d 312 (1965).

Valley Bank's employees testified that it was a common and reasonable practice for the bank to exchange a personal check for a cashier's check without inquiring into Palmer's authority to endorse the check. This evidence was not objected to and was unrebutted and uncontradicted. Consequently, Valley Bank established custom and usage *for this case only.*

I do not believe that Valley Bank's actions comported with reasonable banking practices. Valley Bank's actions in allowing an agent to endorse a check without inquiring into and verifying his authority to do so is a substandard practice of which I cannot approve. Based on the evidence adduced in this case, the trial court erred in finding that Valley Bank did not pay the check in accordance with reasonable banking standards. Therefore, I concur in reversing the decision of the trial court.

BISTLINE, Justice, concurring in part, and dissenting in part.

My inability to join the majority is readily explained. Although I was not sitting with the Court when this case was argued orally, and hence did not participate in the opinion issued October 2, 1990, after the Court granted a rehearing I was fully informed as to the circumstances and facts by Justice Johnson's opinion. Justice Johnson's opinion was easily read, being succinct and to the point, especially when he portrayed a fraudulent scheme which would net the perpetrator of the scheme $6500 in gold coin, to the detriment of someone else. Earlier, the court upheld the magistrate trial court in its conclusion that Valley Bank would swallow the loss. Today, after reconsideration by the other Justices, but a first consideration on my part, I am of the view that the Bank should stand the loss.

To my mind it is incomprehensible that someone could acquire stolen property, peddle it to an unsuspecting average person in return for a personal check made out to whatever name had been assumed, and blithely walk into and out of *any* bank with a cashier's check in his pocket acquired in exchange for the average person's check, or any business person's check, on the pretext that some company for whom the perpetrator claims to work desires that he obtain cashier's checks for some hocus-pocus reason. Additionally, based on my fifty years of perception as to the care customarily taken by banks in customer transactions, the testimony of the bank operations officer as to how loosely this transaction was conducted, persuades me that such opinion testimony was incredible and that the average person needs to be mindful of their bank's protection procedures, or lack thereof. Noting the direction the majority goes, however, I commend it for its moderation in electing to remand to the trial court for reconsideration, and not in out-and-out reversing in favor of the bank.

BISTLINE, Justice, dissenting on denial of petition for rehearing.

Hopefully the Court will reconsider its decision to not give any further consideration of this case until when and if the controversy works its way through the two trial courts and back into our courtroom. Earlier, in August of this year, my vote exonerating Mr. & Mrs. Neibaur from any liability was fully explained. On this second vote we now have the benefit of additional briefing from counsel representing the Neibaurs. It is in order to point out those specific portions of a well-prepared and well-reasoned brief which are not just persuasive, but compelling:

"Defendants/Appellants respectfully argue that the Supreme Court's decision on rehearing in the above-entitled case is erroneous and that the Court should grant the petition for rehearing or modify its decision in order to correct the serious errors of law and fact made in that decision. The decision is inconsistent and it effectively ignores and disregards the specific findings of the trial court as well as the well estab-

lished law on the Uniform Commercial Code. Although the decision stated the findings of the trial court initially, it completely ignored the findings of the trial court and set them aside without making a determination that those findings were clearly erroneous. The decision is not in accordance with, and apparently ignores, the substantial body of law from other jurisdictions as well as established and cited authorities on the U.C.C.

"Additionally, the decision erroneously awarded costs to Valley Bank on appeal. The net effect of the Supreme Court's original decision on appeal and the decision on rehearing was to reverse and remand the decision of the district court. Even though the case is remanded for additional proceedings, Defendants/Appellants Neibaurs are the prevailing party and are thus entitled to costs pursuant to I.A.R., Rule 40.

## FACTS

"The facts of this case have been sufficiently and extensively stated and restated by all parties in their previous briefs and are sufficiently outlined in the Court's original decision. However, for convenience, the basic facts will be restated.

"On May 19, 1987, Mr. Jonak and Mr. Neibaur traveled to Malad, Idaho, to inspect a backhoe that was offered for sale by the supposed agent of a Colorado leasing company, known as Monarch Investment. Later, on May 20, 1987, through a telephone call, Mr. Neibaur agreed to purchase a backhoe for $6,500.00 from Monarch Investment of Colorado. On that same day, Vicki Neibaur issued a check in the amount of $6,500.00 on the account of R & N Enterprises, Ryan or Vicki L. Neibaur at Valley Bank in Idaho Falls, payable to Monarch Investment. On May 21, this check was sent by Federal Express to the Salt Lake City airport Will Call window, to the attention of Monarch Investment. The following day, an individual, representing himself as Dan Palmer, an agent of Monarch Investment, presented the check to Valley Bank at Pocatello, Idaho, for payment by a cashier's check payable to Monarch Investment. This transaction at Valley Bank, Pocatello, is the focal point of the dispute between Neibaurs and Valley Bank.

"Regarding this transaction, the trial court made the following findings of fact and conclusions of law:

7. At the time the check was tendered at the bank, no identification of the gentleman presenting the check was required by the bank employee. The employee did, however, attempt two telephone calls to a number given her, purporting to be his business. There was no answer. No other attempts to contact his purported employer or to establish his identity or authority were made.

8. A computer inquiry was made to verify that there were sufficient funds in the Neibaur account for the check to clear. Upon verifying that, the employee of Valley Bank accepted the Neibaur check and exchanged it for a cashier's check in the same amount, that being $6,500.

9. The endorsement on the Neibaur check when it was cashed at Valley Bank is as follows:

Monarch Investment
By Dan Palmer, Agent
Signed: Dan Palmer

10. The cashier's check issued by Valley Bank, No. 56409, was made payable as follows:

Monarch Investment

It also noted the name "Ryan Neibaur" in the lower left hand corner.

Record, pp. 66 and 67.

\* \* \* \* \* \*

2. Valley Bank was *negligent by failing to make inquiries which a reasonably prudent person would make incident to this transaction. There was a complete failure to ascertain the identity and also the agency or authority of the person cashing the Neibaur check. The bank had a duty to inquire as to Mr. Palmer's identity and authority. Absent such inquiry and confirmation, the endorsement is unauthorized under Idaho Code 28-3-404, and Ryan Neibaur is entitled to receive money from Valley*

Bank for the amount of his check Number 309.

Record, p. 70. (Emphasis added).

"The Supreme Court, on rehearing, construed the magistrate's finding that Valley Bank was negligent to be "in effect, a ruling that Valley Bank did not pay the check in accordance with reasonable banking standards." *Valley Bank v. Neibaur*, S.Ct.Doc. No. 18033, 1991 Opinion No. 114, Dated August 20, 1991, p. 3 [p. 734, 819 P.2d p. 1134]. However, the Supreme Court later, in its decision on rehearing, determined that 'Valley Bank issued its cashier's check in the name of Monarch Investment pursuant to the reasonable banking standard,' *id.*, p. 6 [p. 736, 819 P.2d p. 1136], disregarding the trial court's original findings of fact. No determination was made by this court that the trial court's findings were clearly erroneous. The decision simply states that 'the magistrate judge had no basis to rule that Valley Bank did not pay the Neibaurs' check in accordance with reasonable banking standards.' *Id.* The decision does not discuss the credibility of Valley Bank's witness nor the additional testimony of another Valley Bank officer's testimony that is inconsistent with the former.

"Additionally, the Supreme Court, in its Opinion on Rehearing, vacated the award of costs and attorney's fees to Neibaurs on appeal, and then awarded costs, but not attorney's fees, to Valley Bank. In the original decision by the Supreme Court, the Supreme Court reversed the district court's decision in its entirety. On rehearing, the effect of the Supreme Court's decision was to uphold its original decision in part and remand to the district court only on the evidentiary question of Neibaurs' negligence. Since the district court's decision was reversed and remanded for further proceedings, Neibaurs remain the prevailing party on appeal.

### ISSUES ON APPEAL

"I. ARE THE TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW CLEARLY ERRONEOUS CONCERNING THE FINDING THAT VALLEY BANK'S ACTIONS ARE COMMERCIALLY UNREASONABLE?

"II. ARE THE RECORD AND THE TRIAL COURT'S FINDINGS SUFFICIENTLY UNCLEAR AND AMBIGUOUS REGARDING NEIBAURS' NEGLIGENCE TO REQUIRE THE CASE TO BE REMANDED TO THE TRIAL COURT FOR ADDITIONAL FINDINGS?

"III. IN LIGHT OF THE FACT THAT NEIBAURS WERE THE PREVAILING PARTY BOTH ON APPEAL AND ON REHEARING, IS VALLEY BANK PROPERLY ENTITLED TO AN AWARD OF COSTS ON APPEAL?

### ARGUMENT

"I. *In its decision on rehearing, the Idaho Supreme Court clearly elected to disregard the findings of fact of the Magistrate Court without determining whether those findings were erroneous.*

"A. *Trial Court's findings should not be lightly set aside.*

Rule 52(a), I.R.C.P., clearly states:

Findings of Fact shall not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appear personally before it.

"However, the Supreme Court of the State of Idaho, in its decision on rehearing, clearly disregarded the findings of fact of the trial court when it determined that Valley Bank's actions did not meet the test of a reasonably commercial standard. The court simply found that because the evidence, as given by the operations Officer of Valley Bank, was not directly rebutted, it established for the Supreme Court whether the reasonable banking standard was met. However, this determination by the Idaho Supreme Court literally stripped the trial court of the opportunity to determine the credibility of the Operations Officer of Valley Bank, consider the testimony, stipulation and evidence in its entirety, and to make findings of fact in accordance there-

of. As stated in Rule 52(a), I.R.C.P., and *Wolford v. Tankersley,* 107 Idaho 1062, 695 P.2d 1201 (1984), high regard is to be given to the special opportunity of a trial court to judge the credibility of witnesses who appeared personally before it; where there exists sufficient evidence in the record to support a lower court's findings on credibility, an appellate court sitting without the first hand observation necessary to evaluate a witnesses' credibility, will not set aside those findings.

"However, in this case, the decision on rehearing does just that. Although the testimony of Valley Bank's Operations Officer was not directly rebutted, her testimony and credibility were questioned. Furthermore, the trial judge should have been free to weigh the Operations Officer's testimony concerning the paying and substituting of a cashier's check over a forged endorsement with the testimony of Doyle McKenna concerning the bank's refusal to honor the cashier's check because of an 'irregular endorsement.'

"The two bank officers' testimony, although concerning different transactions, are inconsistent. On the one hand one bank's officer testified that the bank's actions in paying on a forged endorsement was reasonable without checking on the authority of the person cashing it. But later, the other officer testified that the bank rightfully rejected an 'irregular endorsement.' The two policies are inconsistent. However, the decision on rehearing stripped the trial court of the opportunity to consider the evidence and to make appropriate findings.

B. *Valley Bank failed to prove it acted reasonably.*

"In order for Valley Bank to assert the protection of I.C. § 28–3–406, it has the burden of proving (1) that it paid the check in accordance with reasonable commercial standards of the payer's business, and (2) that the drawer's negligence substantially contributed to the making of the unauthorized signature. *Perley v. Glastonbury Bank & Trust Co.,* 170 Conn. 691, 368 A.2d 149 (1976); *McDowell v. Dallas Teachers*

*Credit Union,* 772 S.W.2d 183 (Tex.App. 1989).

"In establishing good faith and compliance with reasonable commercial standards in defense to an action, the bank's burden of presenting evidence concerning applicable standards of banking industry necessitates more than merely demonstrating that it did not fail to comply with its own commercial standards. *Travelers Ins. Co. v. Jefferson Nat. Bank of Kendall,* 404 So.2d 1131 (Fla.App.1981).

"In *Perley v. Glastonbury Bank & Trust Co.,* 170 Conn. 691, 368 A.2d 149 (1976), a case remarkably similar to this case, the officer of the bank testified that it was customary to accept a check presented without authenticating the endorsements. The court there stated:

Such procedure may well be common among banks, but the defendants failed to show that such conduct is reasonable. An examination of signature cards to determine the genuineness of endorsements may not be entirely practical under modern banking methods, but we do not feel that that necessarily relieves banks of the risk of loss from payment on forged checks. *See Jackson v. First National Bank of Memphis, Inc.,* 55 Tenn.App. 545, 553, 403 S.W.2d 109. The law places the risk of loss from forged endorsements on the drawee bank unless it can affirmatively approve the drawer's negligence and its own due care. Such a legal presumption accords with the practical realities of commercial banking transactions since the banks are in a better position than private parties such as the Perleys to a secure means of insurance against losses by forgeries. (Emphasis added.)

*Id.* at 155.

"The Operations Officer did not testify as to any set procedure that the bank would use. She merely testified as to what she did and then stated that it was commercially reasonable. The trial court chose to disregard her testimony and find that the bank negligently paid the Neibaurs' check. It is entirely possible that the bank's policy as well as the custom and practice of the

banking industry is unreasonable. Unless the trial court's finding is clearly erroneous, its findings of fact should be upheld on appeal. In this case, most of the facts of the case were stipulated. There were only a few witnesses. The trial court did not find that the evidence was sufficient to prove that Valley Bank acted in a commercially reasonable manner. Valley Bank simply failed to meet its burden of proof and the trial court's findings should be upheld.

### C. *Valley Bank's conduct was not commercially reasonable.*

"The decision on rehearing correctly states that the determination of what is a commercially reasonable practice is a mixed question of law and fact and that it is context specific. The decision [on rehearing] errs [in assuming] that [Valley] Bank's actions, because they were not directly rebutted and because they constituted custom and usage were, therefore, per se commercially reasonable. A well-known treatise on the Uniform Commercial Codes states that 'the fact that a particular practice is common among banks does not establish that it is commercially reasonable.' 6 Anderson on the UCC § 3–406:37, p. 209 (1984). *See also Perley v. Glastonbury,* 170 Conn. 691, 368 A.2d 149 (Conn.1976); *American Machine Tool Distributors Assoc. v. National Permanent Federal Savings & Loan Assoc.,* 464 A.2d 907 (Dist.Col. App.1983) (citing Anderson on the UCC).

"Several courts have held that specific conduct and policy on the part of a bank was not commercially reasonable. In *Central Inc v. Cache National Bank,* 748 P.2d 351 (Colo.App.1987), the court stated: As a matter of law, reasonable commercial standards require a bank, when dealing with checks purportedly endorsed by an agent, to inquire as to the authority of that agent, particularly if funds are to be credited to the agents personal account. 748 P.2d at 354 (citations omitted).

"In *Twellman v. Lindell Trust Co.,* 534 S.W.2d 83 (Mo.App.1976), the court held, as a matter of law, that the drawee bank, in accepting a check whose first endorsement was made by someone other than the payee, did not act in accordance with reasonable commercial standards. *See also Eatinger v. First National Bank of Lewiston* [199 Mont. 377], 649 P.2d 1253 (1982), in which the court held the bank's failure to check the signature and authority of a co-payee constituted an unreasonable commercial standard.

"The reasonableness of a commercial banking standard must be analyzed in the context of a bank's duty in relation to the depositor's account; although the procedure may be common throughout the banking industry, it is not by that fact alone a reasonable procedure. *Medford Irr. Dist. v. Western Bank* [66 Or.App. 589], 676 P.2d 329 (Ore App. 1984).

"The decision on rehearing cites I.C. § 28–3–505(1) as supporting the decision that sufficient evidence was presented to prove Valley Bank acted in a commercially reasonable manner. That statute indicates that when presentment of an instrument is made the party receiving it may require reasonable identification and evidence of his authority. In this case, the bank's officer testified as to the information she received; however, the trial court determined that the bank did not verify Dan Palmer's authority to endorse the check.

"The decision on rehearing cites and quotes from *Aetna Casualty & Surety Co. v. Hepler State Bank* [6 Kan.App.2d 543], 630 P.2d 721 (1981) but then fails to follow its direction. In *Aetna* the court stated: 'The bank's act of depositing checks payable to a corporate payee into a personal checking account without inquiring as to the depositor's authority was enough' to find that the bank acted unreasonably.

"In *Society Nat. Bank of Cleveland v. Capital Nat. Bank* [30 Ohio App.2d 1], 281 N.E.2d 563 (1972) the court held that a depository bank did not act in a commercially reasonable manner when it cashed a check without ascertaining that the endorser and payee were identical.

"The mere assertion of Dan Palmer that he had authority to endorse the check without some further inquiry by the bank into

his actual authority constitutes an unreasonable commercial standard.

"In this case, the Operations Officer did not ascertain the authority of Dan Palmer to endorse checks for Monarch Investment of Colorado. The trial court determined as a matter of fact and law that this conduct was insufficient to prove the bank acted in a reasonable manner. This Court should also follow the well-established law on this point and make the same determination.

"II. *THE TRIAL COURT'S FINDINGS AND THE RECORD ARE SUFFICIENT AND NO REMAND IS NECESSARY.*

"As stated earlier, Valley Bank must prove that it acted in accordance with reasonable commercial standards before it can take advantage of the estoppel effect of I.C. § 28–3–406. *See Hermetic Refrigeration Co., Inc. v. Central Valley National Bank, Inc.,* 493 F.2d 476 (9th Cir. 1974); Anderson on the UCC further states:

> A person will not be precluded from denying that his signature has been forged when the person asserting that there should be such estoppel is himself negligent. Thus, the defense that negligence substantially contributes to the making of an unauthorized signature is not available to one who pays an instrument under circumstances that do not conform to reasonable commercial standards of the payor's business. That is, the defense of estoppel under UCC § 3–406 may be barred by the claim of counter-estoppel against the person claiming the defense of estoppel. (Emphasis added.)

6 Anderson on the UCC, § 3–406:13, p. 193 (1984). *See also* cases cited therein, *i.e., J. Gordon Neely Enterprises, Inc. v. American Nat. Bank,* 403 So.2d 887 (Ala.1981); *Commercial Credit Equipment Corp. v. First Alabama Bank, N.A.,* 636 F.2d 1051 (5th Cir.1981); *Perley v. Glastonbury Bank & Trust Co.,* 170 Conn. 691, 368 A.2d 149 (1976); *Trust Co. of Georgia Bank, N.A. v. Port Terminal & Warehousing Co.,* 153 Ga.App. 735, 266 S.E.2d 254 (1980), *quoting this text; Susen v. Citizens Bank & Trust Co.* 111 Ill.App.3d 909 [67 Ill.Dec. 465], 444 N.E.2d 701 (1982); *Aetna Casual-*

*ty & Surety Co. v. Hepler State Bank,* 6 Kan.App.2d 543, 630 P.2d 721 (1981), *citing this text; Owensboro Nat. Bank v. Crisp,* 608 S.W.2d 51 (Ky.1980); *Hardex–Steubenville Corp. v. Western Pennsylvania Nat. Bank,* 446 Pa. 446, 285 A.2d 874 (1971); *Seattle First Nat. Bank v. Pacific Nat. Bank,* 22 Wash.App. 46, 587 P.2d 617 (1978).

"Because the trial court found that Valley Bank acted negligently and not in accord with reasonable commercial standards, there is no need to determine whether Neibaurs acted negligently. The UCC clearly places the loss of a forged check on the bank that accepts that forged check, unless the drawer acted negligently. The reason for this is that a bank is in a better position to insure against such unauthorized signature when all parties are innocent. *See Perley v. Glastonbury, supra.* The reason for I.C. § 28–3–406 is to require those whose negligence contributes to the unauthorized signature to bear the liability.

"Even if the Neibaurs were contributorily negligent in causing the forged endorsement, when a bank acts in a commercially unreasonable manner it can not assert the defense of I.C. § 28–3–406. *[Hermetic]* *Hermatic Refrigeration Co., Inc. v. Central Valley Nat. Bank, Inc.,* 493 F.2d 476 (9th Cir.1974).

"In the event this Court determines that the trial court's finding of fact is clearly erroneous, and that the bank's actions in paying the Neibaurs' check over a forged endorsement was commercially reasonable, then the issue of the Neibaurs' negligence must be determined.

"Since, however, the Court determined that the issue concerning Neibaurs' negligence was preserved on appeal, it is clear that the issue was discussed at trial. Together with the fact that the trial court found that the bank acted negligently and the fact that no finding of negligence on the part of Neibaurs was made, it is implicit in the trial court's decision that the Neibaurs did not act in any manner that substantially contributed to the making of the forged endorsement. In other words, the trial court's findings of fact found no negli-

gence on the part of the Neibaurs that substantially contributed to the making of the forged endorsement. Thus, the bank is not allowed the preclusionary effect of I.C. § 28-3-406, and the bank is required by the provisions of the UCC to pay the Neibaurs or to credit their account for the appropriate amount.

*"III. COSTS ON APPEAL.*

"In its original decision, the Supreme Court reversed the decision of the district court and properly recognized that the Neibaurs were entitled to an award of attorney's fees and costs on appeal. However, in the decision on rehearing, the decision vacated that portion of the earlier decision awarding attorney's fees and costs to the Neibaurs, and instead, erroneously awarded costs on appeal to Respondents. However, it is clear that the Neibaurs are still the prevailing party on appeal, and are entitled to, at the least, costs. I.A.R., Rule 40. In essence, the Supreme Court's original decision, together with its decision on rehearing, reversed and remanded for additional proceedings the district court's decision. The Neibaurs were the parties that appealed that decision, not Valley Bank. Thus, the Neibaurs are, and remain, the prevailing party on appeal. On rehearing, the Supreme Court should consider this error and make the appropriate correction.

### SUMMARY

"The trial court made a finding of fact that Valley Bank did not pay the Neibaurs' check in accordance with reasonable commercial standards. However, the decision on rehearing essentially ignored this finding, and without determining that the trial court's findings were erroneous, held that Valley Bank acted reasonably. The record supports the trial court's findings. The trial court is not required to believe every word of the bank's officers nor must the trial court find that the bank's procedures are commercially reasonable because it is customary. The bank failed to meet its burden of proof and the trial court correctly found that the bank could not take advantage of I.C. § 28-3-406.

The bank's actions in not determining the authority of Dan Palmer to endorse the check for Monarch Investments was, as a matter of law, unreasonable and there is no need to remand the case for a determination as to whether Neibaurs' negligence, if any, substantially contributed to the unauthorized and forged signature. Furthermore, the trial court implicitly found that the Neibaurs were not negligent. Since the Neibaurs prevailed both in the original decision and on rehearing, they are the party entitled to costs pursuant to I.A.R., Rule 40. Therefore, Defendants/Appellants respectfully request this Court to grant its Petition for Rehearing."

I fully agree with all of the foregoing and adopt it as my own, and the other members of the Court are invited to do the same.