The OWENSBORO NATIONAL
BANK, Movant,

v.

Sam CRISP, Respondent.

Supreme Court of Kentucky.

Oct. 14, 1980.

Ronald M. Sullivan, Holbrook, Gary, Wible & Sullivan, Owensboro, for movant.

Stewart B. Elliott, Elliott & Carroll, Owensboro, for respondent.

STERNBERG, Justice:

This case involves the application of the Uniform Commercial Code. Sam Crisp lived in Daviess County, Kentucky, and had a personal checking account in the Owens-

boro National Bank. He was swindled out of $6,200 by Bill Carter upon the failure of the bank to exercise reasonable commercial standards in the cashing of a check in this manner: Early in the morning of January 22, 1975, Carter and a confederate stopped their car at Crisp's home. Carter went to the house and the other person stayed in the car. Carter represented to Crisp that the lightning rod on the residence needed repairs and that he would make the repairs for the sum of $12.50. With this Crisp agreed. He wrote out a check for $12.50 and left the name of the payee blank and an open space preceding the amount for which the check was issued. Not long after the bank opened for business, a person identifying himself as Bill Carter presented the check for payment. The check had been altered so that the amount for which it was issued had been raised to $6,212.50 and the name of Bill Carter, the name with which he identified himself to Crisp, had been inserted as the payee. The check looked regular on its face. At the time the check was presented for payment, it had a stamp of "Southern Construction" on the back side, and the cashier had Carter endorse it in her presence. At about 1:30 p. m. on the date the check was issued, the bank received a stop–payment order. The check had, however, been paid by that time and Bill Carter, alias Josh Nell Westbrook, was long gone.

On June 6, 1977, Crisp filed suit in the Daviess Circuit Court against the bank seeking to recover his loss. The bank denied liability. At the conclusion of a trial of the issues before a jury, the trial judge submitted the issues to the jury in an interrogatory which required the jury to decide whether the employees of the bank failed to follow reasonable commercial standards in paying the check and, if so, whether such failure was a substantial factor in causing Crisp's loss. Ten of the twelve jurors found in the affirmative. Accordingly, a judgment was entered in respondent's favor in the sum of $6,200. An appeal was taken to the Court of Appeals where the judgment of the Daviess Circuit Court was affirmed. This court granted review on May 6, 1980.

Movant contends that the evidence shows that Bill Carter, the person to whom the check was drawn, was an imposter and, as such, the bank was not liable. KRS 355.3–405(1)(a). The circuit court held that Carter was not an impostor as used in this statute. The Court of Appeals held that Carter was such an impostor.

KRS 355.3–405(1)(a) provides as follows:
"Impostors–Signature in name of payee.–

(1) An indorsement by any person in the name of a named payee is effective if

(a) an impostor by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee."

█ The issue requiring a definition of the word "impostor" as used in this statute has not heretofore been before this court. The effect of the Uniform Commercial Code is to put the loss on the customer and not on the bank. Accordingly, the word "impostor" must be considered in that light. Consequently, an endorsement by any person of a named payee is effective if someone has induced the maker to issue the instrument to him in the name of the payee. A further clarification of the meaning of the word "impostor" as used herein is that if the maker of a check draws it payable to a creditor and the payee represents to the paying bank that he is the creditor and thus receives the proceeds of the check, then, and in that event, the payee is not an impostor in relation to the drawer and the paying bank may not charge that sum against the drawer's account. Crisp contracted with Carter to do the repair work. The check was given to Carter in payment of the work to be done. Carter inserted his name as payee, and had the work been done as contracted, Carter would have been entitled to the negotiated price of $12.50. This court is of the opinion that Carter was not an impostor.

█ We must next determine whether the bank was required to exercise reasonable commercial standards in cashing the check. Having found that Carter was not

an impostor, as did the trial court, we conclude that his endorsement was not effective insofar as it would limit the liability of the bank. KRS 355.3–406 is designed for the benefit of the bank and provides as follows:

"Negligence contributing to alteration or unauthorized signature.–

Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."

Crisp was negligent as the word is used therein and would, as a matter of law, be compelled to stand the loss except for the requirement contained therein that the check must be paid in "good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business." In other words, even though the drawer of the check (Crisp) may have been negligent in substantially contributing to a material alteration or to the making of an unauthorized signature, the bank may still be responsible if it does not act in good faith and in accordance with the reasonable commercial standards of the banking industry. Although Crisp was negligent, his negligence may be overcome by the negligence of the bank in cashing the check. This was a question of fact which properly was submitted to the jury. The jury found that the cashier of the bank failed to follow reasonable commercial standards in paying Crisp's check and that such failure was a substantial factor in causing Crisp's loss.

Movant argues that the evidence conclusively shows that the bank exercised reasonable commercial standards in cashing the check and that the trial court should have directed a verdict for the bank. Counsel for the bank, at the conclusion of the evidence for Crisp and again at the conclusion of all of the evidence, moved the court to direct a verdict for the bank. The court properly denied the motion. The evidence is conflicting as to whether the cashier of the bank exercised reasonable commercial standards in cashing the check so as to be entitled to a directed verdict. In *Perry v. Ernest R. Hamilton Associates, Inc.,* Ky., 485 S.W.2d 505 (1972), we said, "When, after the proof is all in, a plaintiff demands a directed verdict, the question becomes: Could a reasonable man remain unconvinced?" When the motion for a directed verdict is against the party having the burden (Crisp), then, and in that event, to be entitled to a directed verdict the evidence as a whole must be such that it would not be clearly unreasonable for a jury to find in his favor (Crisp). Palmore's Kentucky Instructions to Juries, Sec. 13.05. Not only does it appear to be clearly reasonable from the evidence for the jury to find in favor of Crisp, but, as a matter of fact, the jury did find in his favor. The trial court did not err in refusing to direct a verdict for the bank.

The Court of Appeals held that Carter was an impostor as that word is used in KRS 355.3–405; however, it held the bank was liable under the theory of negligence. KRS 355.3–406. The Court of Appeals further held that the evidence was sufficient to support the verdict and the judgment.

This court is of the opinion that the Court of Appeals erred in holding that Carter was an impostor. In that respect the decision of the Court of Appeals is reversed, and in all other respects it is affirmed. The judgment of the Daviess Circuit Court is affirmed.

All concur.