AMERICAN FOUNDERS BANK,
INC., Appellant

v.

MODEN INVESTMENTS,
LLC., Appellees.

No. 2012–CA–001276–MR.

Court of Appeals of Kentucky.

May 9, 2014.

Douglas G. Sharp, Louisville, KY, for appellants.

James T. Gilbert, Richmond, KY, for appellee.

Before ACREE, Chief Judge; DIXON and LAMBERT, Judges.

## OPINION

ACREE, Chief Judge:

American Founders Bank (AFB) appeals from a judgment of the Franklin Circuit Court, entered after a bench trial, in favor of Moden Investments, LLC. The judgment holds AFB liable for conversion losses under Kentucky Revised Statutes (KRS) 355.3–420 for having deposited into a third-party's account a cashier's check made payable to Moden bearing a forged endorsement. AFB seeks reversal of the judgment and, contending that Moden's own negligence substantially contributed to the forgery, also demands that we remand the case with instructions to dismiss Moden's complaint in accordance with KRS 355.3–406(1). Having carefully examined the record and considered the arguments and cited authority, we affirm.

## FACTS AND PROCEDURE

In March 2007,[1] John Guzman encouraged five investors[2] to form Moden Investments, LLC, with each member contributing $20,000 toward an enterprise that would culminate in the construction of an assisted living facility in Richmond, Kentucky. The plan was to deposit the $100,000 investment with AFB; on the strength of that deposit, AFB would extend a line of credit to Moden to finance the construction project.

Guzman prepared Moden's organizational documents and the limited liability company was formed on April 24. The circuit court examined the articles of organization and concluded: Moden's five investors constituted its members; Moden was to be member-managed; and Ranjan Mohanty was identified as the managing member. It does not appear from the record that Guzman was to have any participation whatsoever in Moden.[3] On the same day Moden was formed, the members' $100,000 investment was used to acquire a certificate of deposit in that amount in Moden's name at AFB. The signature card associated with the account identified Ranjan Mohanty as the only person authorized to sign documents related to the account.

Just a few days later, Guzman urged the investors to withdraw their deposit because, he said, one of the bank's vice presidents had gotten into trouble.[4] Moden closed its AFB deposit account on May 7, and AFB issued a cashier's check for $100,185.92 made payable to Moden. Guzman told the members he would hold the cashier's check until he could secure similar financing at a different bank; once that occurred, he would deposit the check in the new bank. Guzman thusly came into possession of the check. Precisely how this occurred is not clear from the briefs, but, for purposes of our review, it is sufficient to say that Moden entrusted Guzman with the check.

1. All events occurred in 2007 unless otherwise specified.

2. The investors were Ranjan Mohanty, Chad Gordon, Dennis Szcereniak, Gordan Mujani, and Amiya K. Mohanty.

3. The circuit court identified an inconsistency in the articles of organization, namely that one provision of the articles identified the manager of Moden as AFL Consulting, LLC, a business operated by Guzman, but that the rest of the document indicated the five investors would be responsible for their company's management. The circuit court also noted that AFB admitted that it was aware that Ranjan Mohanty was the managing member. AFB has challenged none of these findings, so we have no reason to question them.

4. What kind of trouble is not specified in the order on appeal and does not appear relevant to our inquiry, although AFB's brief indicates the bank "had suffered a negative exam from the FDIC." (Appellant's Brief, p. 2).

Guzman did not hold the check as planned. On May 10, someone attempted to deposit the cashier's check into a business account at AFB in the name of Housing Innovations. Guzman controlled this account. The cashier's check was returned because it bore an improper endorsement; it was not signed by a member of Moden. Shortly thereafter, the cashier's check was again presented to AFB for deposit into the Housing Innovations account. This time, it bore the forged signature of Moden member Chad Gordon, not the signature of the only authorized signatory, Ranjan Mohanty. An internal investigation conducted by AFB would later reveal that the forged signature was in Guzman's handwriting. Moden members denied they authorized Guzman to endorse the cashier's check or to receive the proceeds.

Once Moden had exhausted its attempts to recover the money from Guzman and AFB, Moden brought suit asserting AFB was liable for conversion losses under KRS 355.3–420. That statute authorizes a claim for conversion when "a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment." KRS 355.3–420(1).

After an appropriate period of discovery and briefing, the circuit court conducted a bench trial. In compliance with Kentucky Rules of Civil Procedure (CR) 52.01, the circuit court entered Findings of Fact, Conclusions of Law, and Judgment that "[w]hen AFB permitted Guzman to negotiate the check that was not payable to him, the bank became liable for the conversion losses. KRS 355.3–420." AFB was ordered to pay Moden $100,185.92, plus prejudgment and post-judgment interest. AFB appeals that judgment.

## STANDARD OF REVIEW

■ When we review a judgment after a bench trial that is compliant with CR 52.01, we adhere to the following rules. "Findings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01. Legal determinations, including those regarding the construction and application of statutes, are reviewed *de novo*. *Wheeler & Clevenger Oil Co. v. Washburn*, 127 S.W.3d 609, 612 (Ky.2004).

## ANALYSIS

AFB states "the only issues [before the Court of Appeals] are the failure of the [Circuit] Court to apply the provisions of KRS 355.3–406 and the failure of the [Circuit] Court to credit the $50,000.00 paid to Moden by Guzman."

We will address both arguments. However, our analysis is frustrated by the requirement that we also address a variety of procedural issues.

*Circuit court's failure to apply KRS 355.3–406 was not error*

■ AFB states it "is aware of its liability under the provisions of KRS 355.3–420, absent the defenses raised herein." (Appellant's Brief, p. 4). The first defense AFB asserts that should bar Moden's recovery is that Moden's own negligence "substantially contribute[d] to ... the making of a forged signature on" the cashier's check. KRS 355.3–406(1). AFB claims the circuit court's "fail[ure] to address, in any way, the negligence of Moden ... is a fundamental error." (Appellant's Brief, p. 9). We disagree.

The parties cite more than thirty (30) cases and a dozen other authorities intended to illuminate our understanding of KRS 355.3–406. Many of these authorities were

authored when the statute's prior version was in effect. To understand KRS 355.3–406, and the role of the fact-finder applying it, a short history of the statute is necessary.

The original version of KRS 355.3–406, enacted in 1958 and effective July 1960, stated:

> Negligence contributing to alteration or unauthorized signature.—
>
> Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

KRS 355.3–406 (1960 and 1980 Supp.). Our Supreme Court said that version of the statute was "designed for the benefit of the bank[.]" *Owensboro Nat. Bank v. Crisp*, 608 S.W.2d 51, 53 (Ky.1980). In *Crisp*, because the bank's customer was negligent in handling his own account, the bank argued the trial court should have applied the statute and entered a directed verdict in its favor. However, the Supreme Court disagreed, stating:

> [E]ven though the drawer of the check (Crisp) may have been negligent in substantially contributing to a material alteration or to the making of an unauthorized signature, the bank may still be responsible if it does not act in good faith and in accordance with the reasonable commercial standards of the banking industry. Although Crisp was negligent, his negligence may be overcome by the negligence of the bank in cashing the check. This was a question of fact which properly was submitted to the jury.

*Id.* This common law analysis of the statute was conducted when contributory negligence principles still prevailed in Kentucky. Therefore, the fact-finder in *Crisp* was faced with an all-or-nothing question of fact—did the bank's negligence overcome Crisp's? If yes, then Crisp could recover in full; if no, Crisp would recover nothing. The jury in *Crisp* found against the bank. *Id.* at 52.

But the law has substantially changed. Many of the numerous authorities cited by both parties to this appeal provide far less help under the current statute and, frankly, they are largely unnecessary. We begin by considering the impact on the statute of Kentucky's adoption of the tort doctrine of comparative fault.

Our Supreme Court replaced contributory negligence concepts with the doctrine of comparative fault in *Hilen v. Hays*, 673 S.W.2d 713, 720 (Ky.1984), an automobile negligence action. The author, Justice Leibson, wrote a concurring opinion to his own majority in which he said, "I would provide guidelines for application of the new rule to other situations that will be affected by the change to comparative negligence." *Id.* (Liebson, J., concurring). One such "other situation" was a bank's liability under the Uniform Commercial Code (UCC). Consciously or not, the Kentucky legislature embraced Justice Leibson's advice when it amended KRS 355.3–406 as part of its adoption of the Revised Article 3 of the Code.

In 1990, the National Conference of Commissioners on Uniform State Laws promulgated Revised Article 3 to the UCC. Sarah Howard Jenkins, *Revised Article 3: "[Revise] It Again, Sam,"* 36 Hous. L.Rev. 883, 884 (Fall 1999). Kentucky was among the first states to adopt the revised article, and it did so without modification. Unif. Laws Annot., Unif. Commercial Code

Refs & Annos. ("Kentucky. Adopted Revised Article 3 and amendments conforming other sections of the Code to Revised Article 3 by L.1996, c. 130, effective January 1, 1997.").

Adoption of the revised article had the effect of incorporating much of Kentucky's common law touching upon these issues, including *Crisp* (the relative negligence of bank and customer is a question of fact) and portions of the reasoning from virtually all the cases the parties cite in their respective briefs. Additionally, the statute now clearly includes the concept of comparative negligence embraced in Kentucky in *Hilen v. Hays.* Since 1997, the statute has stated:

> Negligence contributing to forged signature or alteration of instrument
>
> (1) A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.
>
> (2) Under subsection (1) of this section, if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.
>
> (3) Under subsection (1) of this section, the burden of proving failure to exercise ordinary care is on the person asserting

the preclusion. Under subsection (2) of this section, the burden of proving failure to exercise ordinary care is on the person precluded.

KRS 355.3–406 (1996).

The Official Comment regarding this revised statute says that "Section 3–406(a) [KRS 355.3–406(1)] is based on former Section 3–406." [5] UCC § 3–406 (2002), Official Comment 1. However, the revised article adds two new subsections to UCC 3–406 (KRS 355.3–406, as adopted in Kentucky). According to official Comment 4:

> Subsection (b) [KRS 355.3–406(2)] differs from former Section 3–406 in that it adopts a concept of comparative negligence. If the person precluded under subsection (a) [KRS 355.3–406(1)] proves that the person asserting the preclusion failed to exercise ordinary care and that failure substantially contributed to the loss, the loss may be allocated between the two parties on a comparative negligence basis.

UCC § 3–406 (2002), Official Comment 4. The final subsection, KRS 355.3–406(3), allocates the burden of proof under subsection (1) and subsection (2).

Summarizing, when presented with a claim for conversion against a bank under KRS 355.3–420 that is met with the defense of KRS 355.3–406(1), the fact-finder first must determine the bank's liability under KRS 355.3–420. Next it must determine whether, under KRS 355.3–406(1), the conduct of the bank customer "substantially contribute[d] to an alteration of an instrument or to the making of a forged signature on an instrument" which is the subject of the conversion claim. If the

---

**5.** In KRS 355.1–103(3), the Kentucky legislature provided that the Official Comments of the National Conference of Commissioners on Uniform State Laws "represent the express legislative intent of the General Assembly and shall be used as a guide for interpretation of this chapter, except that if the text and the official comments conflict, the text shall control." There is no conflict here.

answer to that question is no, KRS 355.3–406 is inapplicable. However, if the answer is yes, the fact-finder must then allocate the loss between the bank and its customer "according to the extent to which the failure of each to exercise ordinary care contributed to the loss." KRS 355.3–406(2). With this understanding of the operation of the statute, we continue our review.

The circuit court as fact-finder in this case completed the first step described above by concluding AFB was liable under KRS 355.3–420. As has been stated, however, the circuit court did not set out in the judgment whether it believed Moden substantially contributed to Guzman's forgery which, by operation of KRS 355.3–406, would impact Moden's recovery. The extent to which the circuit court considered the statute and Moden's conduct, if at all, notwithstanding there being no reference to that consideration in the judgment, is difficult to know. However, a different question—whether the court was required to do so—turns out to be a quite determinable procedural question.

■ A reviewing court will not consider any argument on appeal that has not been preserved in the trial court. *Brown v. Commonwealth*, 416 S.W.3d 302, 310–11 (Ky.2013). Was the argument preserved by raising the issue before the circuit court and, if so, when was the issue raised? These questions are inherent and implicit in every review. AFB was supposed to answer these questions by complying with CR 76.12(4)(c)(v) which states:

> The organization and contents of the appellant's brief *shall* [include]: . . . *at the beginning of the argument a state-ment with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.*

CR 76.12(4)(c)(v)(emphasis added). AFB's brief fails to satisfy this requirement. Therefore, our analysis is hampered by the need to determine for ourselves whether the issue is even preserved at all for our review.

We could choose to dispense with the entire appeal procedurally by applying CR 76.12(8)(a). That rule authorizes this Court to strike an appellant's brief "for failure to comply with any substantial requirement of this Rule 76.12." As indicated by the verb "shall" in CR 76.12(4)(c)(v), the statement of preservation is mandatory and we consider this a substantial requirement of CR 76.12. However, despite the mandatory nature of the rule, our appellate courts have tended to ignore the failure when: (1) the record is not voluminous and (2) preservation is clear from the face of the record. *See Baker v. Campbell County Bd. of Educ.*, 180 S.W.3d 479, 481–82 (Ky.App.2005); *Cornette v. Holiday Inn Express*, 32 S.W.3d 106, 109 (Ky.App.2000)(cited in *Hudson v. Hudson*, 2011 WL 3805980 (Ky.2011)(2011–SC–000091)).

Although this record is larger than many, and includes two videotapes of the trial and other hearings, we will give AFB the benefit of the doubt.[6] We will undertake our own search of the record to see if the argument was preserved. That search takes us first to the pleadings.

The first opportunity AFB had to present the issue and preserve the argument

---

6. Our decision to scour the record in this case should not be taken as a measure of when CR 76.12(8)(a) should or should not be applied. We would be perfectly justified in applying it here. However, this case presents an opportunity to demonstrate how the appellate process is frustrated and delayed by the failure of appellate advocates to comply with rules of appellate procedure.

was in its Answer to Moden's Complaint. That Answer makes no reference to KRS 355.3–406, nor does it assert that Moden's negligence substantially contributed to the making of the forged instrument AFB wrongfully honored.[7] Each of these is a "matter constituting an avoidance or affirmative defense" that should have been presented in the Answer, CR 8.03, but was not in this case.

■ As a general rule, a party's failure to timely assert an affirmative defense waives that defense. *Bowling v. Kentucky Dept. of Corrections*, 301 S.W.3d 478, 485 (Ky.2009); CR 8.03. Applying this rule would mean that AFB's argument was waived, *unless* the circuit court allowed it to be presented later. So, despite the fact that doing so is not our role, we will continue "canvassing the record in order to determine if the claimed error was properly preserved for appeal" at a subsequent point in the litigation. *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky.App.1990) (quoting 7 Bertelsman and Phillips, *Kentucky Practice*, CR 76.12(4)(c)(iv), Comment 4 (4th ed.1989 supp.)).

In our search of the four-volume record, we found the trial brief AFB prepared and submitted to the circuit court prior to judgment. There, AFB simply said: "Lastly, under the provisions of [KRS 355.]3–406, a person who fails to exercise ordinary care which is a substantial factor in the alteration of the instrument is precluded from asserting the forgery against one who in good faith pays the instrument unless the payor fails to exercise ordinary

care." This is the sum and substance of the argument before the circuit court and appears to be the first time the issue was raised.

However, the fact that AFB did eventually raise this issue does not tell us whether the circuit court was willing to allow AFB to argue it—a matter within its sound discretion. *Nichols v. Zurich American Ins. Co.*, 423 S.W.3d 698, 707–08 (Ky.2014), (finality March 13, 2014) (trial court has discretion to allow or disallow a waived affirmative defense provided the discretion is not abused). Our examination of the record revealed no motion to amend the Answer to allow the affirmative defense, nor did we find any ruling to that effect. Nor are we directed by either party to a ruling that the circuit court, in fact, considered the defense waived. The record, at least our review of it, does not reveal much of the thinking of the circuit court on this question.

Reviewing courts (and litigators and advocates as well) often ask, "What was the trial judge thinking?" It is, sometimes, the critical question upon which an appeal turns. The solution may be to remand the case to find out. But a remand is not always required to solve this problem. As this opinion demonstrates, there is an application of law for that.

AFB argues that the "fundamental error" justifying reversal is the circuit court's failure to consider that Moden's conduct gave rise to "an absolute bar" to liability based on KRS 355.3–406.[8] But did

---

**7.** The Answer states only that Moden had given Guzman "authority" to negotiate the check. AFB did make a rote assertion of estoppel as an affirmative defense, but with no other context. In its brief filed with this Court, AFB argues that, prior to enactment of the current version of KRS 355.3–406, (in fact, prior to its original enactment), the defense codified by the statute was "character-

ized as estoppel." (Appellant's Brief, p. 7). However, even given the liberal view of notice pleading, we do not believe there was an intention that the single word "estoppel" in the Answer constitutes an assertion of the affirmative defense embraced by KRS 355.3–406(1).

**8.** Generally, while this could have been a correct statement of the law under the old ver-

the circuit court, in fact, fail to consider the issue? To make a start at answering this question, we look to the circuit court's Findings of Fact, Conclusions of Law, and Judgment.

AFB is correct that there is no reference in the judgment to KRS 355.3–406 and little reference to Moden's acts which AFB characterizes as negligent and as contributing to the forgery. But is this conclusive proof the circuit court failed to consider this issue? The answer is no.

Generally speaking, we cannot know, *a priori,* that lack of reference in a judgment to a particular issue means the circuit court did not consider it. In fact, we found in this record the judge's docket sheet of a hearing which includes the handwritten note "3–406 is law"; this indicates to us that the circuit court did consider the statute at some point. There is the possibility that the judgment reflects an implicit finding the circuit court considered KRS 355.3–406 inapplicable, either on procedural grounds (waiver of an affirmative defense), or substantively because the circuit court concluded Moden's conduct did not substantially contribute to the making of the forgery, either of which would have made further consideration of KRS 355.3–406 unnecessary.

We simply cannot know the full extent of the circuit court's thought processes that culminated in the written judgment. However, we should not be surprised that the civil rules provide a solution to this problem when it involves a finding relative to an issue essential to the judgment; it is CR 52.02.

When a litigant believes the circuit court failed to find a fact "on an issue essential to the judgment[,]" CR 52.04, he can move the court for such a finding pursuant to CR 52.02. And there is a consequence for failing to do so. If this procedural option is not exercised, the litigant (who has now become an appellate advocate) cannot base an appeal on the failure of the circuit court to address it. That is the essence of CR 52.04, which states:

> A final judgment shall not be reversed or remanded because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless such failure is brought to the attention of the trial court by a written request for a finding on that issue or by a motion pursuant to Rule 52.02.

CR 52.04. If AFB failed to ask the circuit court for a ruling on this issue, we can neither reverse nor remand the case. Unfortunately, again, we cannot tell from AFB's brief whether it filed a CR 52.02 motion seeking an additional finding of fact. We must again return to the record and undertake our own search—in for a penny, in for a pound.

Our continuing search of the record revealed that AFB filed one post-judgment motion captioned: "NOTICE—MOTION—ORDER TO ALTER, AMEND, VACATE OR FOR A NEW TRIAL." The body of the motion states that AFB, "pursuant to the applicable provisions of CR 52 and CR 59, moves the Court to alter, amend or vacate its Findings of Facts, Conclusions of Law and Judgment entered herein June 15, 2012 and to grant a new trial." Furthermore, the proposed order AFB tendered to the circuit court sought only the following relief: "that the Judgment of June 15, 2012 be and is hereby vacated and this matter set for trial on the ____ day of ____, 2012."

---

sion of the statute that applied contributory negligence principles, it does not correctly state the law under the current version of the statute which applies comparative negligence concepts.

The relief sought, therefore, did not include any request for additional findings regarding KRS 355.3–406 or Moden's negligence. AFB's reference to "the applicable provisions of CR 52" does not change that fact. Although CR 52.02 is the vehicle for seeking additional findings, the rule affords other relief. Under CR 52.02, "the court[,] . . . on the motion of a party . . . may [1] amend its findings *or* [2] make additional findings. . . ." CR 52.02 (numerals and emphasis added). As AFB's motion states, it was seeking to amend the circuit court's findings, something the applicable provisions of CR 52 specifically authorize.[9] The circuit court denied AFB's motion.

We conclude that AFB failed to preserve this argument for review and we are prohibited from reversing or remanding the case on this issue by operation of CR 52.04. As a matter of preservation of error, the rule requires a party to move the circuit court for additional findings of fact when he believes the trial court failed to make findings on an essential issue. "Failure to bring such an omission to the attention of the trial court by means of a written request will be fatal to an appeal." *Vinson v. Sorrell,* 136 S.W.3d 465, 471 (Ky.2004) (citing *Cherry v. Cherry,* 634 S.W.2d 423 (Ky.1982)).

Therefore, we must decline to consider this issue further.

*AFB is not entitled to a set-off*

■ AFB contends the circuit court erred when it failed "to credit the $50,000.00 paid to Moden by Guzman." We disagree.

Prior to filing suit, Moden sought to resolve the entire dispute extrajudicially. Moden's members and Guzman reached an agreement whereby Moden would release Guzman and his affiliated organizations from any liability in exchange for Guzman's payment of $50,000 from the Housing Innovations' bank account into which the cashier's check had been deposited. Moden and Guzman agreed that once he performed under the agreement, by delivering or at least tendering the $50,000, he would still owe the company $50,185.92.

Each of Moden's members signed a letter which reflected this agreement. However, before Guzman actually performed, he learned AFB would not release him from any liability. He refused to make the $50,000 payment to Moden.

The circuit court, having received the letters into evidence and heard the testimony of witnesses for both parties, found that Moden had not recovered $50,000 from Guzman. Because there was no set-off, AFB was ordered to pay the full amount of the cashier's check, $100,185.92. It is this finding the appellant seeks to reverse.

AFB argues the award to Moden was erroneous because the letters constitute a judicial admission that Moden had received $50,000 from the Housing Innovations account. The appellant urges us to reduce the award by that amount.

■ "A judicial admission is a formal statement concerning a disputed fact, made by a party during a judicial proceeding, that is adverse to that party, and that is deliberate, clear, and uncontradicted." *Zapp v. CSX Transp., Inc.,* 300 S.W.3d 219, 223 (Ky.App.2009) (citations omitted). The appellant is correct that written statements can constitute judicial admissions; however, for a written statement to qualify as a judicial admission, it must be "made

9. Moden's response in the circuit court to AFB's post-judgment motion points this out, stating "the motion refers to CR 52. However-

er, Moden [*sic;* AFB is clearly intended] does not suggest any specific findings. . . ."

as a formal act by [the declarant] in a judicial proceeding[.]" *McGuire v. Citizens Fidelity Bank & Trust Co.,* 805 S.W.2d 119, 121 (Ky.1991). A judicial admission by the plaintiff may entitle the defendant to a directed verdict. *Witten v. Pack,* 237 S.W.3d 133, 136 (Ky.2007) (citing Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 8.15[4], at 590 (4th ed.2003)).

Whether a statement constitutes a judicial admission is a question of law reviewed *de novo. Id.* A circuit court's findings of fact are reviewed for clear error. *Moore v. Asente,* 110 S.W.3d 336, 354 (Ky.2003).

These letters did not qualify as judicial admissions. They were not formal statements made during a judicial proceeding. They were out-of-court statements which happened to be admitted into evidence. AFB has not argued that any member of Moden adopted the letters or the representations contained therein as part of his testimony during the judicial proceedings, and our review of the record reveals that the witnesses rejected those representations outright. In fact, the content of the letters was directly contradicted by Ranjan Mohanty's testimony that Guzman never paid the $50,000 to Moden.

The letters were not judicial admissions, but ordinary evidence and the circuit court was entitled to give that evidence such weight as it saw fit. *Baird v. Baird,* 234 S.W.3d 385, 388 (Ky.App.2007) (citation omitted).

AFB also seeks to characterize Guzman's payment of $25,000 each to Chad Gordon and Ranjan Mohanty as partial reimbursement of the investment. This argument is contradicted by contrary evidence presented at trial. Gordon and Mohanty testified that in accordance with an agreement effected among the three men shortly after Moden was created and the $100,000 investment deposited, but before the forgery of the cashier's check, Guzman had paid them each a commission for procuring the investment and forming Moden. The circuit court's finding that the two $25,000 payments did not constitute repayment of the cashier's check was supported by the evidence adduced at trial and we see no reason to disturb it.

The circuit court's refusal to treat the letters as judicial admissions was proper, and there was ample evidence in the record to support the conclusion that Moden had not been reimbursed $50,000 of the $100,185.92 cashier's check.

AFB is not entitled to a set-off.

*SUMMARY AND CONCLUSION*

A party's failure to comply with rules of appellate procedure, especially regarding preservation of error, will frustrate and delay the appellate review process. His failure to actually preserve error can be fatal to an appeal. The application of KRS 355.3–406 is less complicated than it once was. And not every written or verbal statement in the context of litigation constitutes a judicial admission.

For the foregoing reasons, we affirm in full the June 15, 2012 judgment of the Franklin Circuit Court.

ALL CONCUR.