Hardex-Steubenville Corporation, Inc., Appellant, *v.* Western Pennsylvania National Bank.

447

Argued March 22, 1971. Before Bell, C. J., Jones, Eagen, O'Brien, Roberts, Pomeroy and Barbieri, JJ.

reargument refused February 4, 1972.

*James K. O'Malley*, with him *Morris, Safier & Makoroff*, for appellant.

*Harold Gondelman*, with him *Gerald S. Lesher*, and *Baskin, Boreman, Wilner, Sachs, Gondelman & Craig*, for appellee.

Opinion by Mr. Justice Pomeroy, December 20, 1971:

We are concerned on this appeal with the right of a depositor in a bank to recoup from the bank the sums paid from his bank account on forged checks, and the defenses available to the bank against its customer's

claim. Appellant here sued appellee bank to recover amounts so charged against its account. After a jury trial a verdict was returned in favor of the appellee bank. Appellant's motion for a new trial was denied and judgment was entered on the verdict. Because we hold that the trial court's charge to the jury contained prejudicial error, we will reverse and remand for a new trial.

The basic facts of this case are not complex. In 1962 Hardex-Steubenville Corporation, Inc., appellant (herein "the Customer") opened a checking account with appellee (herein "the Bank"), executing signature cards which, *inter alia*, authorized Myron Swartz, the President of the Customer, to sign checks on its behalf. In 1963 the Customer employed one Frank Iskra as an office manager and accountant. Early in 1964, Mr. Iskra began forging Mr. Swartz' signature to checks purportedly made by the Customer, payable to Mr. Iskra's order. Mr. Iskra continued this practice until it was detected in January, 1967. In the three-year period before discovery Mr. Iskra forged and the Bank paid checks in amounts totaling $97,000. Recovery is sought in the present suit only for these checks forged between January, 1966 and January, 1967, in amounts aggregating $63,105.28.[1]

As is revealed by Mr. Iskra's deposition which was read into the record at trial,[2] he was in an ideal position to carry off this fraud. As office manager, he received the Bank's monthly statements of his employ-

---

[1] As discussed in more detail *infra*, page 456, recovery for checks honored prior to January, 1966, is precluded by subsection 4-406(4) of the Uniform Commercial Code, 12A P.S. §4-406(4).

[2] Mr. Iskra entered a plea of guilty to charges of embezzlement and forgery in the Court of Common Pleas for Allegheny County, Criminal Division, on March 19, 1969, prior to the trial of this action.

er's accounts, together with the month's cancelled checks. From the latter, he removed the forged checks and altered the Customer's books so as to make the missing funds appear to be attributable to inventory pilferage. The Customer notified the Bank promptly upon discovery of Mr. Iskra's defalcations, but the Bank refused to credit the Customer's account with the amounts it had paid out on the forged checks.

At trial the Customer introduced testimony tending to show that the Bank had been negligent in honoring the forged checks. The Bank introduced testimony to the contrary and showing that during the period involved it had sent to the Customer regular monthly statements of its accounts, together with the Customer's cancelled checks for each month.

The agreement between the Bank and the Customer under which the checking accounts here involved were established contained the normal provision that the Bank will accept sums deposited with it by the Customer and will pay out all or any part of these sums to a payee named in a check drawn by the Customer and bearing a signature authorized by the Customer. Except to the extent that the relationships of the parties are embodied in an agreement, they are governed in Pennsylvania by the Uniform Commercial Code. Act of April 6, 1953, P. L. 3, reenacted by Act of October 2, 1959, P. L. 1023, 12A P.S. §§3-101 et seq., as amended. As with the Code's predecessor in this field, the Negotiable Instruments Law, the fundamental rule of the Code with respect to an unauthorized signature on an instrument is that it "is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; . . ." Code Section 3-404(1), 12A P.S. §3-404(1). Thus under the Code a bank breaches its agreement with a customer when it pays the holder of a forged check. It is this breach

which constitutes the customer's cause of action against a bank to recover the sums paid out on checks bearing forged signatures.[3]

The defense in the case at bar was not that the instruments were genuine, but that the Customer had failed in its duty to discover and promptly notify the Bank of the forgeries. This duty and the effect of a customer's failure to discharge it are set forth in subsections (1) and (2), respectively, of Section 4-406. 12A P.S. §4-406(1) and (2). Because of their importance to this case the text of these subsections is given herewith in full:

"(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.

"(2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank

(a) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and

---

[3] The trial court, while referring to the Uniform Commercial Code as containing the applicable law, did not include discussion of those basic principles in its charge. We believe such discussion might have aided the jury in understanding the other interrelated rules contained in the Code relating to forged instruments; exceptions to the rule are difficult to grasp without an understanding of the rule itself.

(b) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration." Under subsection 4-406(2), above quoted, if the customer does not exercise reasonable care in examining the statement and the items (checks) returned to him and does not promptly notify the bank of any items bearing unauthorized signatures, he is precluded from asserting his unauthorized signature against the bank, i.e., he is precluded from asserting his cause of action arising from the bank's breach of its agreement with him. This section is directly related to §3-404, *supra,* the rule of which is applicable *unless* the customer is precluded from denying that the signature is authorized.

As indicated above, there was evidence that the Customer failed to exercise reasonable care to examine his statement and cancelled checks and to notify the bank of unauthorized signatures discovered in the course of that examination. The trial court correctly instructed the jury with respect thereto in the light of §4-406(1) and (2) and in charging that such a failure, if found by the jury to have occurred, may preclude the customer from recovering.

Where the learned trial court fell into what we consider to have been prejudicial error, however, was in failing to instruct the jury properly concerning the next Code provision, viz., subsection 4-406(3), 12A P.S. §4-406(3), which provides: "The preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item." While the court did mention this section to the jury, it went on to state: "But if you find

that the customer himself did not exercise reasonable care and he was careless and did not fulfill the necessary requirements and duties as described here in the language established in the code, and if you find also that the bank itself did not exercise reasonable care in carrying out its duties you have two parties here at fault, and neither exercising ordinary care nor exercising reasonable care, and therefore the status quo should be preserved and no recovery should be had by the Plaintiff."[4]

Under the court's instruction, if the jury found both that the Bank had failed to use ordinary care in paying the checks and that the Customer had failed to exercise reasonable care in discovering the forgeries, the jury would have had to return a verdict for the Bank. This was not an accurate statement, for under subsection 4-406(3) of the Code, if the Customer's evidence had convinced the jury that the Bank exhibited a lack of ordinary care in paying the checks forged by Mr. Iskra, then the failure of the Customer to exercise reasonable care in examining the statements and checks and notifying the Bank of the forgeries would not preclude the Customer from asserting the unauthorized signatures on the checks and the Bank's breach of its agreement with the Customer.[5]

---

[4] A specific exception was taken by the Customer's counsel to this part of the charge and also to the answer to the question from the jury quoted in footnote 5, *infra*.

[5] The crucial nature of this error is illuminated by the one question asked by the jury of the court during its deliberations, and the court's answer thereto: Question: "If we feel that both parties are negligent, who do we find for?" Answer: "As was stated by the Court in its Charge, if you find that the Plaintiff [Customer] did not exercise reasonable care, and, if you find that Defendant [Bank] did not use ordinary care, as both terms were explained by the Court, then the parties remain as they are with no recovery for the plaintiff."

Although to our knowledge no Pennsylvania court has previously had occasion to interpret §4-406 of the Code, the error in the court's interpretation of the section is clearly indicated by the unanimity of decisions to the contrary from other jurisdictions, noted in the margin, where the question of the effect of the Code subsection 4-406(3) has been considered.[6]

---

[6] Cases construing U.C.C. §4-406, subsection (3):

*Exchange Bank & Trust Co. v. Kidwell Construction Co., Inc.,* 463 S.W. 2d 465 (Tex. Civ. App. 1971): "Thus by reason of the bank's negligence, the preclusion contemplated by §4.406(b)(2) of the Code [§4.406(2)(b)], is not available to the bank as a defense. Uniform Commercial Code, §4.406(c) [§4-406(3)], *supra;* 18 A.L.R. 3d 1376, 1400."

*First National Bank of Springdale v. Hobbs,* 248 Ark. 76, 450 S.W. 2d 298, 7 U.C.C. Reporting Ser. 323 (1970): "Appellant argues that statements were available; that some of the items were not paid until after the availability of the statements, but the bank was not notified of the unauthorized signature. This is no defense for the bank, since the same section [4-406], Subsection (3), provides 'the preclusion under Subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the items (s).'"

*W. P. Harlin Construction Co. v. Continental Bank & Trust Co.,* 23 Utah 2d 422, 464 P. 2d 585 (1970): Where the bank has shown that the customer had received with a previous statement a cancelled check on which the signature was forged by the same forger who had signed the check for recovery of the payment of which suit was there brought, the court held that before the bank could come under the protection of subsection 4-406(2), "the fundamental question in this case [was] whether 'customer (plaintiff) established lack of ordinary care on the part of the bank'."

*Faber v. Edgewater National Bank of Edgewater, N. J.,* 101 N.J. Super. 354, 244 A. 2d 339 (1968), where the court stated, in dictum, that, "subsection 4-406(3) makes the rules regarding due diligence [subsections 4.406(1) and (2)] inoperative if the bank, itself, has been negligent. In other words, a negligent bank cannot put the loss resulting from a forgery or the like onto the customer on the ground that the customer also has been negligent."

*Jackson v. First National Bank of Memphis, Inc.,* 55 Tenn. 545, 403 S.W. 2d 109 (1966), where subsection 4-406(3) was also

Appellee relies on two cases decided before the Uniform Commercial Code was adopted in Pennsylvania as support for its position that a customer's negligence in failing to examine his bank statements and cancelled checks precludes him from recovering from the bank which paid forged checks regardless of the lack of ordinary care exhibited by the bank in so doing. *Myers v. Southwestern National Bank,* 193 Pa. 1, 44 Atl. 280 (1899), and *Interstate Hosiery Mills v. First National Bank of Lansdale,* 139 Pa. Superior Ct. 181, 11 A. 2d 537 (1939). Those cases are not controlling here for two reasons. First, in neither was there a contention or a finding that the bank had failed to exercise ordinary care in paying the forged checks, and second, to the extent that either case is inconsistent with the rules contained in the Uniform Commercial Code, it can no longer be considered the law in Pennsylvania.

More closely in point and clearly forecasting the rule as codified by enactment of the Code two years later is this Court's decision in *Johnson v. First National Bank of Beaver Falls,* 367 Pa. 459, 81 A. 2d 95 (1951). Plaintiffs recovered a jury verdict in their suit against a bank because of its payment of forged checks drawn on plaintiffs' account. The trial court granted defendant's motion for judgment n.o.v. on the ground that plaintiffs had failed to give the bank prompt notice of the forgeries and were thereby precluded from asserting them. This Court reversed, holding that "[w]hile a depositor's failure to give the bank timely notice that forged checks have been charged against his account 'is a good defense . . . the bank has the burden of proof' . . . of its lack of knowledge in such connection, free from any fault of its own." 367 Pa. at 465.

---

held to preclude a negligent bank's defense under subsection 4-406 (2).

The Court went on to quote with approval from an opinion of the Supreme Court of Rhode Island: " 'there is ample authority that the bank must then [after payment of a forged check has been established] affirmatively show that it had exercised due diligence in its transactions with the forger before it can put in issue the depositor's alleged negligence'." 367 Pa. at 465. Finding that sufficient evidence of the bank's negligence had been presented to make the issue thereof one for the jury, the Court reversed the judgment n.o.v. and entered judgment for the plaintiffs on the verdict. Thus, the rule in this Commonwealth even before the adoption of the Uniform Commercial Code was that the customer's failure promptly to notify the bank of forged checks returned to it would not preclude the customer's recovery where the bank had been negligent in paying the checks.

In its brief, the Bank argues that the Customer's negligence in making the checks available to the forger and failing properly and promptly to reconcile its bank statements precludes its recovery under Section 3-406 of the Code, 12A P.S. §3-406, reprinted in the margin.[7] The Bank requested no instruction on this point and did not take exception to the court's omission of any such instruction in its charge. The only legal theory which was before the jury upon which it could have found for the Bank was the theory of the Customer's negligence in failing to detect the forgeries and notify the Bank thereof. Section 3-406 operates under certain

---

[7] Section 3-406 reads in full as follows: "Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."

conditions to prevent a purported maker of an instrument whose negligence has contributed to the creation or perpetration of a forgery from recovering against a good faith drawee. This relates to the maker's conduct before the fact of forgery, whereas §4-406(1) relates to the maker's conduct afterwards. The two sections clearly involve and require different factual determinations. It would thus be impossible for us now, as appellee urges, to uphold the verdict on the ground that it was justified under §3-406, for the legal theory of that section was never presented to the jury as a possible defense, nor was the jury instructed as to the facts it would have to find to make the defense viable.[8]

Finally, the Bank argues that the Customer's recovery here is barred by the rule of subsection 4-406(4) of the Code that regardless of the care or lack of care of either the bank or the customer, "a customer who does not within one year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature . . . is precluded from asserting against the bank such unauthorized signature." 12A P.S. §4-406(4). While we agree that this subsection precludes the Customer from recovering from the Bank for any forged check the latter paid and returned to the Customer more than one year prior to the Customer's discovery of the forgery, we do not read the subsection as precluding the Customer here from recovering for checks which had been paid and returned to it within the one year period preceding the date on which the forgeries

---

[8] The factual underpinning on which a Section 3-406 defense by its terms rests would include negligence of the plaintiff-maker (customer), substantial contribution of that negligence to the making of the unauthorized signature; payment of the item in good faith by the bank; and payment in accordance with reasonable commercial standards of the banking business.

were first reported to the Bank. The Customer apparently read this Code provision as do we, since it did not seek recovery with respect to any forged checks paid and returned to it more than one year before it discovered the forgeries. The return to the Customer of each month's statement together with the cancelled checks covered thereby started anew the one year period within which the Customer was required to detect the forgeries on the checks returned with that statement or be forever barred from asserting his cause of action against the Bank.

Because we hold that a crucial portion of the trial court's charge, to which prompt and specific exception was taken, was erroneous, the judgment must be reversed and the case remanded for a new trial.

It is so ordered.

Mr. Chief Justice BELL dissents.