J-A33030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| HITCHING POST, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CYNTHIA PATTON A/K/A CINDY PATTON AND NORTHWEST SAVINGS BANK | |
| Appellee | No. 697 WDA 2016 |

Appeal from the Order Entered June 22, 2015
In the Court of Common Pleas of Clearfield County
Civil Division at No(s): 2013-1677-CD

BEFORE:     LAZARUS, J., SOLANO, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SOLANO, J.:                          **FILED JUNE 26, 2017**

Appellant, Hitching Post, Inc., appeals from the order granting summary judgment in favor of Appellee, Northwest Savings Bank.[1]  We affirm.

The trial court accurately recited the relevant factual and procedural background of this case, which we summarize here. **See** Trial Ct. Op.,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant also sued Cynthia Patton, seeking entry of a civil judgment based on an order of restitution entered against Patton in a criminal case.  Patton has advised that she is not participating in this appeal because she "has already entered into a Settlement and Stipulated Judgment with Hitching Post regarding their underlying claim against her . . . [and] . . . the issues involved deal with the Participant/Appellee, Northwest Savings Bank." Correspondence, 8/30/16.  Because the trial court entered judgment against Patton on April 28, 2016, this appeal is properly before this Court, as all claims against all parties have been resolved.

6/23/15, at 1-4. Cynthia Patton, the accountant and bookkeeper at Hitching Post's restaurant, embezzled thousands of dollars from Hitching Post by illegally cashing ten checks made payable to the order of "cash." The checks were intended to be used to restock an ATM machine. *Id.* at 2. Six checks bore the authentic signature of Hitching Post's owner, Dianne Harmick. *Id.* Hitching Post could not exclude Ms. Harmick as the person who signed the four remaining checks or otherwise identify the signer. *Id.*

Patton presented the checks to her bank, First Commonwealth Bank, which then presented the checks to Hitching Post's bank, Northwest, for payment. Trial Ct. Op., 6/23/15, at 2. As a result of her misconduct, Patton pleaded guilty to criminal charges on April 9, 2013. *Id.* at 2 n.1. As part of her sentence, she was ordered to pay restitution to Hitching Post totaling $62,026.19. As of a May 20, 2015 hearing, she had paid "just shy of $21,000 . . . $20,900, close to that." N.T., 5/20/15, at 9.

Hitching Post then sued Northwest for negligence in negotiating the ten checks and specifically alleged the following:

> 17. That [Northwest] should have had policies or procedures to refuse to negotiate corporate checks made to the order of cash, when there is no indication on the check as to whom is authorized to endorse said check.
>
> 18. That [Northwest] should have had policies and procedures to refuse to negotiate corporate checks made to the order of cash, when an individual whose name does not appear on the check, attempts to cash such a corporate check.
>
> 19. That [Northwest] knew that the person endorsing the forged checks written to cash was [Patton].

20. That [Northwest] knew or should have known that [Patton] was not an authorized person to endorse a corporate check made to the order of cash.

21. That [Northwest] did not adhere to industry standards in relation to policies and procedures regarding the depositing or cashing of corporate checks made to the order of cash.

Hitching Post's Am. Compl., 11/15/13, at 7.

The parties engaged in discovery and traded various motions that contested whether Northwest could be held liable in light of provisions of the Uniform Commercial Code ("UCC"), as enacted in Pennsylvania, dealing with negotiable instruments. Northwest relied primarily on UCC provisions allowing it to pay checks made payable to "cash" without requiring any indorsement. *See* 13 Pa.C.S. § 3109(a)(3). Hitching Post focused on liability under the UCC's provisions dealing with presentment warranties, arguing that an account holder may recover from a bank if the bank pays a check that the account holder has not authorized. *See id.* § 3417(b). Late in the case, Hitching Post focused more directly on a liability claim under Section 4401 of the UCC, which addresses when a bank may withdraw money from a customer's account and suggests that the bank may not do so if an instrument contains a forged drawer's signature or a forged indorsement. *See id.* § 4401 & Cmt. 1.

Ultimately, both parties filed cross-motions for summary judgment. On June 23, 2015, the trial court entered summary judgment for Northwest, denied Hitching Post's motion for summary judgment, and dismissed

J-A33030-16

Hitching Post's amended complaint with prejudice.[2]  Among other things, the trial court held that Northwest had no liability because it merely had paid checks that were made payable to cash, which was entirely appropriate under UCC § 3109(a)(3).   Trial Ct. Op. at 5-6.  The court concluded that Hitching Post waived its Section 4401 argument by raising it too late in the case.  *Id.* at 8-9.

Hitching Post filed this timely appeal,[3] and states its issues as follows:

1. Did the lower court err in determining that [Hitching Post] waived 13 Pa.C.S. 4401 as a legal theory upon which to deny Appellee's motion for summary judgment?

2. Did the lower court err in not considering 13 Pa.C.S. 4401 as a bar to Appellee's motion for summary judgment?

3. Did the lower court err in granting Appellee's motion for summary judgment due to the fact that there is an outstanding genuine issue of material fact as to whether the checks at issue were forgeries?

4. Did the lower court err in determining that [Hitching Post] never specifically averred that any of the checks at issue were forged?

_____

[2] The order was dated June 22, 2015.

[3] Initially, Hitching Post had filed a notice of appeal on July 23, 2015.  On August 7, 2015, Northwest filed an application with this Court to quash the appeal, pointing to the then-unresolved claim against Patton.  *See* n.1, *supra*.  On August 21, 2015, we ordered Hitching Post to explain why the appeal should not be quashed.  On August 24, 2015, we granted Northwest's application to quash and vacated our August 21 order as moot.  Order, 8/24/15.  After judgment was entered against Patton on April 28, 2016, Hitching Post filed this timely appeal on May 13, 2016.

- 4 -

5. Did the lower court err in determining that there is a distinction between forged checks written to cash or payable to order?

Hitching Post's Brief at iv (reordered to facilitate disposition).[4]

Our Supreme Court recently explained:

Summary judgment is appropriate where the record clearly demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. **Atcovitz v. Gulph Mills Tennis Club, Inc.,** 571 Pa. 580, 812 A.2d 1218, 1221 (2002); Pa. R.C.P. No. 1035.2(1). When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. **Toy** [**v. Metropolitan Life Ins. Co.**, 928 A.2d 186, 195 (Pa. 2007) (plurality opinion)]. Whether there are no genuine issues as to any material fact presents a question of law, and therefore, our standard of review is *de novo* and our scope of review plenary. **Weaver v. Lancaster Newspapers, Inc.,** 592 Pa. 458, 926 A.2d 899, 902–03 (2007).

**Estate of Agnew v. Ross**, 152 A.3d 247, 259 (Pa. 2017).

The principal focus of Hitching Post's appeal is UCC § 4401, the application of which, in Hitching Post's view, should have precluded entry of summary judgment in favor of Northwest. Hitching Post's Brief at 13. Section 4401 states:

---

[4] The order of arguments presented in Hitching Post's brief does not correspond to the order of questions presented, and, in fact, there is not a clear congruence between what Hitching Post lists as its "Questions Presented" and what it then argues. Our decision focuses on the arguments Hitching Post actually makes in its brief, rather than issues that Hitching Post lists but does not clearly argue.

**When bank may charge account of customer**

**(a) General rule.**—A bank may charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and the bank.

13 Pa.C.S. § 4401. A comment to Section 4401 states, "[a]n item containing a forged drawer's signature or forged indorsement is not properly payable." 13 Pa.C.S. § 4401, Cmt. 1. Hitching Post contends that the checks that were drawn on its account at Northwest and then cashed by Patton were not "properly payable" to Patton because they were "forged," and that Northwest therefore may be held liable for cashing the checks.

In support of its contention, Hitching Post argues, "[a]n unauthorized indorsement is equivalent to a forged indorsement, and an instrument is converted when it is paid on a forged indorsement under the UCC." Hitching Post's Brief at 13 n.1 (quoting ***Nisenzon v. Morgan Stanley DW, Inc.***, 546 F. Supp. 2d 213, 224 (E.D. Pa. 2008)).[5] Hitching Post posits that: "Under

---

[5] In ***Nisenzon***, the plaintiffs wrote two checks made payable to FISERV Securities, Inc., for a total of $300,000 from their account at Morgan Stanley, and gave the checks to a third party to deposit into the FISERV account. 546 F. Supp. 2d at 219-20. Instead, the third party fraudulently indorsed the checks by writing on the back of the checks "For Deposit Only" and the account number of the third party's company. ***Id.*** The court held that Morgan Stanley "improperly paid two fraudulently indorsed checks drawn on their account at Morgan and improperly debited $300,000." ***Id.*** at 219-20. Therefore, Morgan Stanley was liable to the plaintiffs because
*(Footnote Continued Next Page)*

the UCC, a bank breaches its agreements with a customer when it pays the holder of a forged check. It is this breach which constitutes the customer's cause of action against a bank to recover the sums paid out on checks bearing forged signatures." *Id.* at 14-15 (quoting **Nisenzon**, 546 F. Supp. 2d at 225 (citing **Hardex–Steubenville Corp. v. W. Pa. Nat'l Bank**, 285 A.2d 874, 876 (Pa. 1971)).[6] In Hitching Post's view, Northwest breached its contract by paying Patton, as the bearer of the allegedly forged checks, and entry of summary judgment in favor of Northwest therefore was improper. *Id.* at 15-16. Upon careful review, we conclude that Hitching Post's argument confuses the applicable legal principles and glosses over the facts of record.

A check is a draft, a type of negotiable instrument that orders the payment of money. 13 Pa.C.S. § 3104(e), (f). The person signing the check is its "drawer." *Id.* § 3103(a). Usually, the drawer will have an account at a bank in which funds have been deposited for payment of the check, and, by

*(Footnote Continued)* ————————

"Morgan was not authorized to charge [the p]laintiffs' account based upon a forged indorsement." *Id.* at 225.

[6] In **Hardex-Steubenville**, a third-party forged the signature of the plaintiff's president on numerous checks made payable to that party. 285 A.2d at 876. The defendant-bank honored the checks, and the plaintiff then sued the bank for doing so. *Id.* The bank conceded the checks were forged and defended on a theory that a customer has a duty to discover and promptly report forged checks. *Id.* The jury found in favor of the bank, but our Supreme Court reversed and remanded for a new trial because of errors in the jury charge. *Id.* at 878, 880.

writing a check, the drawer orders that bank (in UCC terminology, the "drawee") to pay funds from that account pursuant to the order in the check. The check may be payable either to an identified person (in which case it is "payable to the order" of that person) or to whoever possesses it (in which case it is "payable to the bearer" of the check). *Id.* § 3109(a), (b). If a check is made payable to a specific person, that person can cash the check by signing ("indorsing") it. *Id.* § 3201(b); *see id.* § 3104.[7] If a check is made payable to its bearer, the bearer may cash the check merely by presenting it to the bank; indorsement is not necessary. *Id.* § 3201(b).

These fundamental UCC rules determine a bank's potential liability if it honors a check that has an unauthorized or forged signature.[8] This liability was summarized in *Perini Corp. v. First Nat'l Bank of Habersham Cty., Ga.*, 553 F.2d 398 (5th Cir. 1977):

_____

[7] "'Indorsement' means a signature, other than that of a signer as maker, drawer or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of negotiating the instrument, restricting payment of the instrument or incurring indorser's liability on the instrument . . . ." 13 Pa.C.S. § 3204.

[8] We recognize that the transactions here contained an intermediate step: Patton did not present the checks directly to Northwest for payment, but instead presented them to her own bank, First Commonwealth, which paid them and then presented the checks to Northwest for payment (reimbursement). That intermediate step has no bearing on the applicable analysis here. *See generally Nisenzon*, 546 F. Supp. at 225-26 (resolving Section 4401 claim against Morgan Stanley, notwithstanding that checks were actually deposited at Citizens Bank of Pennsylvania, *id.* at 219-20, which in turn had presented the checks to Morgan Stanley for payment).

> In general, the drawee bank is strictly liable to its customer drawer for payment of either a forged check or a check containing a forged indorsement. In the case of a forged indorsement, the drawee generally may pass liability back through the collection chain to the party who took from the forger and, of course, to the forger himself if available. In the case of a forged check, however, liability generally rests with the drawee.

553 F.2d at 403; *accord Travelers Indem. Co. v. Stedman*, 895 F. Supp. 742, 746-47 (E.D. Pa. 1995) ("where the only forged signature is an indorsement, the drawee normally may pass liability back through the collection chain to the depositary or collecting bank, or to the forger herself if she is available, by a claim for breach of presentment warranties").[9]

An initial question therefore is whether the allegedly forged or unauthorized signature[10] is that of the check's drawer or is an indorsement by its payee. Here, the record is undisputed that, of the ten Hitching Post checks that were cashed by Patton, six were signed by Hitching Post's owner, Ms. Harmick, as their drawer. Hitching Post's Am. Compl. at 6; Ex. C to Northwest's Mot. for Summ. J., 3/13/15 (copy of Hitching Post's response

---

[9] Though we are not bound by decisions of federal courts or courts of other jurisdictions, we may cite them as persuasive. *Nicholas v. Hofmann*, ___ A.3d ___, ___n.21, 2017 WL 1102790, *10 n.21 (Pa. Super. 2017); *Commonwealth v. Chambers*, ___ A.3d ___, ___ n.5, 2017 WL 900006, *8 n.5 (Pa. Super. 2017). Because of a dearth of Pennsylvania decisions on the questions presented here, the parties have looked to the decisions of federal courts applying those provisions of the UCC that have been enacted in Pennsylvania, and we have done the same.

[10] An "unauthorized signature" is a "signature made without actual, implied or apparent authority. The term includes a forgery." 13 Pa.C.S. § 1201(41).

to Northwest's Interrogatory No. 21, which asked Hitching Post to identify the person who actually placed the signature on the checks in dispute). They therefore were not forgeries and were not unauthorized.

To recover with respect to the other four checks, Hitching Post had to show that those checks were not signed by Ms. Harmick or by someone else with authority to sign them. The record contains no evidence by which Hitching Post can make such a showing at trial, however. When presented with interrogatories by Northwest seeking the identity of the four checks' signators, Hitching Post responded only with question marks, *see* Ex. C to Northwest's Mot. for Summ. J., 3/13/15, and in its brief to this Court, Hitching Post fails to identify any specific evidence supporting its contention that these four checks had unauthorized signatures. Although Hitching Post cites to general deposition testimony by Patton that she sometimes forged checks, *see* Hitching Post's Brief at 5-6 (citing N.T. Patton Dep., 2/10/15, at 24, 31), it has presented no evidence (from Patton's deposition or any other source) that Patton forged the signatures on **these four checks**, even though the checks are in evidence and Hitching Post has had ample opportunity to examine them or to retain an expert to examine them. The burden to produce evidence to avoid summary judgment belonged to Hitching Post, and Northwest correctly argues that Hitching Post failed to meet that burden.

Nor did Hitching Post present evidence that any of the checks at issue contained forged or unauthorized indorsements. All of the checks were payable to "cash." Therefore, under the UCC, they were bearer instruments that did not require any indorsement at all. 13 Pa.C.S. §§ 3109(a), 3201(b).[11] Northwest therefore was free to pay the checks regardless of whether they were signed, or by whom.

We therefore conclude that Hitching Post's argument under Section 4401 is without merit and the trial court therefore did not err in entering summary judgment for Northwest.[12] In view of this conclusion, we need not decide whether the trial court erred in holding that Hitching Post's argument under Section 4401 was waived because it was crafted too late in the case.[13]

---

[11] "If the drawer writes in the word 'bearer' or 'cash,' the check reads 'to the order of bearer' or 'to the order of cash.' In each case the check is payable to bearer." 13 Pa.C.S. § 3109, Cmt. 2. Therefore, any person possessing a check made out to "cash" may cash it at the bank.

[12] We may affirm on grounds other than those stated by the trial court. ***Mariner Chestnut Partners, L.P. v. Lenfest***, 152 A.3d 265, 277 (Pa. Super. 2017).

[13] We note, however, that both the trial court and Northwest make compelling arguments that Hitching Post may not invoke Section 4401 as a basis for recovery because Hitching Post did not raise its argument under that section until "the day of argument, after Northwest filed its response to Hitching Post's Motion and briefed the Cross-Motions." Trial Ct. Op. at 9. The trial court noted Hitching Post's fluid litigation strategy, first asserting that it was proceeding under a common law theory, then alternatively seeking relief under Section 3405 of the UCC. ***Id.*** at 6. Subsequently, in its motion for summary judgment, Hitching Post cited UCC § 3417(b), and then, finally, within its brief on cross-motions for summary judgment it asserted

*(Footnote Continued Next Page)*

Finally, at the end of its brief, Hitching Post presents three one-paragraph arguments in support of what it labels additional issues. ***See*** Hitching Post's Brief at 16-18. We conclude that no relief is due with respect to those issues. Hitching Post's argument regarding the first of those three issues merely reiterates the standard for resolving a motion for summary judgment. ***See id.*** at 16. On the next issue, Hitching Post refers back to its Section 4401 argument in contending that the trial court erred "in determining that Hitching Post never specifically averred that any of the checks at issue were forged." ***See id.*** at 17. Hitching Post's last issue talks about whether the court erred in distinguishing forged checks written to cash or payable to order and states, "Appellant understands the finding of the lower court that an indorsement is not required on checks made payable to cash." ***Id.*** at 18. Because we conclude that Hitching Post's Section 4401 argument is meritless, we similarly conclude that Hitching Post's last three issues, which all in some way seek to supplement that argument, lack merit as well. After viewing the record in a light most favorable to Hitching Post, we discern no material issues of fact or errors of law. ***See Ross***, 152 A.3d at 259. Accordingly, we affirm the order below.

_(Footnote Continued)_ ───────────

for the first time that it was entitled to relief under Section 4401. ***Id.*** at 7, 8. By that time, the opportunity for Northwest to take discovery on that issue had expired — the court-ordered February 28, 2015 discovery deadline had long since passed.

The application of Northwest's counsel to withdraw is granted. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/2017